(74 Misc. Rep. 353.)

## PEOPLE v. HARRIS et al.

(Court of General Sessions, New York County. November, 1911.)

1. HOMICIDE (§ 135*)—INDICTMENT—SUFFICIENCY.

A count in an indictment charging manslaughter in the first degree, and alleging that the defendants did willfully and feloniously choke, overcome, and strangle the deceased by means of fire and of the smoke thereof, by reason whereof deceased died, is not subject to demurrer.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 215–223; Dec. Dig. § 135.*]

2. HEALTH (§ 32*)—REGULATIONS—UNSAFE BUILDINGS—"FACTORY."

Labor Law (Consol. Laws 1909, c. 31) § 80, providing that all doors leading in and to any factory shall be so constructed as to open outwardly, where practicable, and shall not be locked, bolted, or fastened during working hours, is not limited in its operation to the owners of tenant factories, defined by section 94 as buildings, separate parts of which are occupied and used by different persons and one or more of which parts are so used as to constitute a factory, but applies to the owners of a factory occupying one floor of a building.

[Ed. Note.—For other cases, see Health, Cent. Dig. § 32; Dec. Dig. § 32.*

For other definitions, see Words and Phrases, vol. 3, pp. 2642, 2643.]

3. CONSTITUTIONAL LAW (§ 278*)—"DUE PROCESS OF LAW"—FACTORY REGULATIONS.

Labor Law (Consol. Laws 1909, c. 31) § 80, providing that all doors leading in and to any factory shall be so constructed as to open outwardly where practicable, and shall not be locked, bolted, or fastened during working hours, is within the police power of the state, and is not a deprivation of property without due process of law, within the federal or state Constitutions.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 763, 765, 767–770, 772–777, 779–806, 808–810, 816–824, 907–924, 942; Dec. Dig. § 278.*

For other definitions, see Words and Phrases, vol. 3, pp. 2227–2256; vol. 8, p. 7644.]

4. HEALTH (§ 32*)—REGULATIONS—UNSAFE BUILDINGS.

Labor Law (Consol. Laws 1909, c. 31) § 80, providing that all doors leading in or to any factory shall be so constructed as to open outwardly where practicable, and shall not be locked, bolted, or fastened during working hours, prohibits the fastening of any such door during working hours.

[Ed. Note.—For other cases, see Health, Cent. Dig. § 32; Dec. Dig. § 32.*]

5. HOMICIDE (§ 138*)—INDICTMENT—SUFFICIENCY.

Allegations in a count in an indictment for manslaughter in the first degree alleging failure of defendants to perform their duty with regard to the keeping of their factory in a safe condition for their employés, and that the defendants, while engaged in the commission of a misdemeanor,

caused the death of the decedent, that they failed to provide adequate means to guard their employés from injury by fire which might occur therein, and failed to keep the factory free from all unnecessary accumulations of inflammable and combustible material, thereby affecting a large number of human beings, among whom was the decedent whose life was lost in a fire which occurred in the factory, and that the defendants in the manner and form and by the means aforesaid, did kill and slay the decedent, were insufficient to sustain the charge of manslaughter, on the theory that the nonperformance of these duties constituted a public nuisance.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 231; Dec. Dig. § 138.*]

**6. NUISANCE (§ 59*)—"PUBLIC NUISANCE"—STATUTORY PROVISIONS.**

Penal Law (Consol. Laws 1909, c. 40) § 1530, providing that a public nuisance consists in unlawfully doing an act or omitting to perform a duty, which act or omission annoys, injures, or endangers any considerable number of persons, refers to duties such as are directed by statute.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 135, 136; Dec. Dig. § 59.*

For other definitions, see Words and Phrases, vol. 6, pp. 5799–5804.]

**7. HOMICIDE (§ 138*)—INDICTMENT—SUFFICIENCY.**

A count of an indictment for manslaughter alleging that defendants, who were the owners of a factory, failed to keep the doors unfastened during working hours, as a result of which decedent lost his life in a fire in the factory, is sufficient to state an offense on the theory of the maintenance of a public nuisance by defendants.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 231; Dec. Dig. § 138.*]

Isaac Harris and Max Blanck were indicted for manslaughter. Demurrers to the indictments allowed in part, and disallowed in part.

Charles S. Whitman, Dist. Atty., Charles F. Bostwick, and Robert S. Johnstone, for the People.

Max D. Steuer and Gerald B. Rosenheim, for defendants.

O'SULLIVAN, J. The indictments herein set forth that on the 25th day of March, 1911, the defendants were engaged in business in the county of New York under the name of the Triangle Waist Company, and were the owners and proprietors of a factory which occupied the ninth floor of a certain building at the corner of Washington Place and Greene street. It is alleged that the defendants were the owners of the factory, and conducted, operated, supervised, and controlled it; that on said day a fire occurred in the factory, by which employés of the defendants were burned to death. Thereafter, on the charge that defendants by their criminal and negligent conduct, control, and supervision of their factory caused the death of several employés, the defendants were indicted for manslaughter in the first and second degrees. Seven indictments have been filed against the defendants for manslaughter. These indictments are identical, with the exception of the name of the person alleged to have been killed. The defendants have demurred to five of the indictments and to each and every count therein.

[1] Three counts in each indictment charge manslaughter in the first degree and three manslaughter in the second. The first count charges common-law manslaughter in the first degree. It alleges, in substance, that the defendants did willfully and feloniously choke, suffocate, and strangle the deceased by means of fire and of the smoke thereof, by reason whereof the deceased died. The defendants demur to this count on the ground that the "mere fact that death resulted is not alone sufficient to justify the inference that the weapon was deadly, or that the means of death was likely to produce death." They further contend "that the court must be able to say beyond a reasonable doubt that death is likely to result when a person is burned." The defendants' argument might well be directed to this point if this were a charge of assault in the first degree. This being a charge of manslaughter and the fact and cause of death being alleged, the argument is inapplicable. Whether the allegations in this count are susceptible of proof is not a matter to be considered on demurrer, and the demurrer thereto is disallowed.

[2] The second count of the indictment, which charges manslaughter in the first degree, alleges that defendants while engaged in the commission of a misdemeanor did willfully and feloniously kill the decedent. This count is based upon an alleged violation of section 80 of chapter 36 of the Laws of 1909 (Consol. Laws 1909, c. 31), as amended by chapter 461 of the Laws of 1910, which enactments are known as the Labor Law. With other provisions for the regulation of factories, section 80 of article 6 of the Labor Law provides that:

"All doors leading in and to any such factory shall be so constructed as to open outwardly where practicable, and shall not be locked, bolted or fastened during working hours."

By section 1275 of the Penal Law (Consol. Laws 1909, c. 40) any person who violates or does not comply with article 6 of the Labor Law is guilty of a misdemeanor. By section 1050 of the Penal Law a person engaged in committing or attempting to commit a misdemeanor affecting the person or property, either of the person killed or of another, is guilty of manslaughter in the first degree.

The allegations in this count charge that the defendants fastened, locked, and bolted, and kept fastened, locked, and bolted, a certain door in their factory, which door led to a hallway in the building giving exit to the public street; that at the time of the fire the decedent attempted to leave the said factory by means of the said door, but by reason of the door being locked and bolted the decedent was unable to leave and was burned to death, for all of which this count charges the defendants with manslaughter in the first degree.

The defendants contend that under the Labor Law they are not chargeable with responsibility. It is claimed that under section 94 of the Labor Law, which declares who shall be responsible for the observance and punishable for the violation of the Labor Law, this count fails to charge the defendants with the commission of any crime, inasmuch as the count does not show that the defendants owned and operated a tenant factory. In the language of the Labor Law the

word "factory" frequently appears to be used interchangeably with the word "building," and the word "owner" seems in certain places to refer to the owner of the building, in others the owner of the factory or manufacturing establishment. The expression "tenant of a factory" may be confused with the term "tenant of a building." It is important to give these words and phrases their proper distinction. Obviously the owner of the building may be the tenant of the same, and, while the tenant is not necessarily the owner of the building, he may be the owner of the factory or manufacturing establishment. Certain sections of the Labor Law impose particular obligations upon the owner of a building used as a factory. Certain others place distinct duties upon the owner or proprietor of a factory, and there are certain obligations common to both. Section 94 defines a tenant factory as "a building, separate parts of which are occupied and used by different persons, companies or corporations, and one or more of which parts is so used as to constitute in law a factory."

The defendants in this count are described as:

"The owners and proprietors of a certain factory, to wit, a certain workshop and manufacturing and business establishment which then and there occupied the whole of the ninth floor of a certain building situated at the corner of Washington Place and Greene street and were then and there the lessees and tenants of the said floor."

The defendants insist that, because this count fails to describe them as owners and operators of a tenant factory, it must be resolved in their favor. It seems unnecessary to state that owners and proprietors in control of a factory in which employés have suffered injury from the failure of such owners to perform their duty have been held responsible under common and statutory law; but the important consideration here is that the statute has made the nonperformance of a particular duty a misdemeanor, which, in this instance, becomes the foundation of a charge of manslaughter in the first degree, and the defendants are entitled to a strict construction of the statute.

This count alleges that the defendants were the owners and proprietors of a factory on the ninth floor of a certain building, in which factory it is further stated that many persons were employed. Section 2 of the Labor Law provides that:

"The term factory shall be construed to include also any mill, workshop or other manufacturing or business establishment where one or more persons are employed at labor."

In the case of People v. Taylor, 192 N. Y. 401, 85 N. E. 760, the Court of Appeals, speaking through Judge Chase, said that:

"An examination of all the sections in the article of the Labor Law relating to factories shows that it was the intention of the Legislature to make an owner, as the person beneficially interested, generally liable for violations of the article, and also to place upon the persons immediately or personally connected with the acts prohibited the responsibility for carrying out the provisions thereof."

It does not appear that the defendants herein were the owners of a tenant factory. If they were actually such and their responsibility

was created or increased by indicting them as owners of a factory, they have reason to complain; but section 94 of the Labor Law provides as follows:

" * * * Except as in this article otherwise provided the person or persons, company or corporation conducting or operating a factory, whether as owner or lessee of the whole or of a part of the building in which the same is situated, or otherwise, shall be responsible for the observance and punishable for the non-observance of this article, anything in any lease or agreement to the contrary notwithstanding."

Every consideration of the law on the subject convinces me that the owners of a factory are liable for a violation of the provisions of section 80 of the Labor Law.

[3] In further demurring to this count the defendants argue that section 80 of the Labor Law in conjunction with section 94 thereof is unconstitutional, in that it deprives them of their property without due process of law in violation of the Constitution of the United States and of the state of New York. They assert that the language of section 80 is ambiguous; that it may mean either that all doors shall be locked, or it may mean that no door shall be locked, during working hours; that the hardships arising from compliance with the provisions of the statute make it harsh and unreasonable; that it is an unjust and arbitrary exercise of the police power of the state.

It is not my intention to follow the lengthy arguments of the defendants and the prosecution for and against this proposition, nor shall I add another to the many unsuccessful attempts to define police power. A well-recognized function of the police power, however, extends to the protection of the lives, health, and quiet of all persons. Of course, its regulations must be reasonable in relation to the subject to which they are applied. The courts have frequently said that the mere fact that legislation is harsh and that hard cases might arise under the law affords no ground for declaring it invalid. Here the end in view is the protection of factory employés, and it is not a harsh or unreasonable provision of law which requires that owners of a factory shall keep the doors thereto unlocked during working hours; nor is the enforcement of such a law any invasion of constitutional rights.

[4] Defendants also claim as a ground of demurrer that the provisions of section 80 of the Labor Law do not require that all doors to a factory should be kept unlocked during working hours, that section 80 does not mean that every door shall be unlocked, but that it is a sufficient compliance with the law if one door be not locked, bolted, or fastened. It will be remembered that section 80 in this particular requires that:

"All doors leading in or to any such factory shall be so constructed as to open outwardly where practicable, *and shall not be locked, bolted or fastened during working hours.*"

Because the first clause of this sentence begins with the words "all doors" and the second clause reads "shall not be locked," etc., the defendants construe the act to mean that all doors shall not be locked,

and that, if one be unlocked, it is a sufficient compliance with the act. I do not believe that the intention of the Legislature can be hidden under such a construction. Following the analytic argument of the defendants, the second clause in its relation to the first simply implies the subject, and a simple relative for the second clause makes it they shall not be locked. Whatever the grammatical construction of the act, it is certain that the Legislature did not intend to leave to the owner the choice of locking certain doors and leaving certain others unlocked. For the protection of employés the law has placed upon the employer an obligation to leave all doors leading to his factory unlocked during working hours. There is no question of the Legislature's intention when it declared that all doors shall open outwardly. A locked door opens neither inwardly nor outwardly. If any door leading to the factory was locked and bolted during working hours, the law was violated. The demurrer to this count is disallowed.

[5] The third count charges the defendants with manslaughter in the first degree. It is based upon the alleged failure of the defendants to perform their duty with regard to the keeping of their factory in a safe condition for their employés, and upon a violation of the law which places particular obligations upon owners in the operation and control of factories. On the theory that the alleged nonperformance of these duties and the violation of the law constitute a public nuisance which becomes a misdemeanor by the provisions of the Penal Law, it is alleged that the defendants, while engaged in the commission of a misdemeanor, caused the death of the decedent, and the defendants are therefore charged with manslaughter in the first degree. In support of the allegations which charge nonperformance of duty, the count, in substance, sets forth that the defendants failed to provide adequate means to guard and protect their employés and laborers while in the said factory from injury by or from any fire which might occur therein, and failed to keep the said factory free from all unnecessary accumulation of inflammable and combustible material while laborers were within the factory.

It is charged specifically that the defendants did carelessly cause, suffer, and permit great quantities of remnants and clippings of cloth, dirt, lint, and rubbish to be and remain in the said factory, which materials, it is alleged, were of a highly inflammable and cumbustible nature, and that they permitted these and other materials to incumber and obstruct passageways to the doors of the factory, thereby affecting a large number of human beings, among whom was the decedent, whose life it is alleged was lost in the fire which occurred in the factory, and therefore the count charges that the defendants, in the manner and form and by the means aforesaid, did kill and slay the decedent. As matter of law, employers are bound to furnish a reasonably safe place for their employés. The statutes having this object in view have made certain special provisions the violations of which constitute misdemeanors.

The statement that the materials mentioned are of a highly combustible and inflammable nature is a conclusion. While it may be susceptible of proof, there is nothing in the count to show that they were

the cause of the fire; in fact, from all that the indictment reveals the origin of the fire is unknown.  There is certainly nothing in the common law which makes a misdemeanor of the employer's failure to furnish his employés with a safe place, and, while it may be a duty a failure to comply with which might constitute culpable negligence, there is nothing in the statute which makes this particular violation of duty a misdemeanor, nor does it come within the statutory definition of a public nuisance.

If the validity of this count rested wholly upon these allegations, the count would fail, but there is in this count the other charge that the defendants failed to keep unlocked, unbolted, and unfastened a certain door in the factory.  For their failure in this regard the defendants are charged with maintaining a public nuisance which constitutes a misdemeanor.  The generally accepted idea of a public nuisance is one which has come down to us through the common law. While the commonly accepted theory of a public nuisance has been that it affected the community at large, it was nevertheless a nuisance if it affected any considerable portion of a community.  There appears always to have been the idea of an offense, injury, or annoyance to the public in public places or the invasion of a right which the community at large might exercise if it saw fit to do so.  Manufacturing establishments have been prolific of public nuisances, such as offensive odors, noxious gases, disturbing noises, smoke, cinders, and fire which disturbed repose and comfort or menaced health or rendered life insecure to any considerable number of persons in the community.

A careful examination of authorities fails to disclose a case in which the owner of such a place was held for maintaining "a public nuisance" because of the injury which it worked upon the laborers and employés at the source of the annoyance and within the confines of the factory.  But the common law in its progress has been applied to new conditions as they presented themselves.  It is not an inflexible instrument which will not bend to correct a wrong because precedent is lacking.  In the manufacturing establishments of the present time there are frequently more human beings engaged than there are inhabitants in the entire population of villages where the common-law theory of "public nuisances" applies.  Whether or no our penal statute which defines "public nuisances" is an extension of the common-law doctrine of public nuisance, it seems to be in accord with the reason of that doctrine.  In my opinion it covers the allegation in this count that the defendants kept locked and bolted a door in their factory during the hours of labor.

[6] Section 1530 of the Penal Law defines a public nuisance as a crime against the order and economy of the state, and consists in unlawfully doing an act or omitting to perform a duty, which act or omission "(1) annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons; or  *   *  * (4) *in any way* renders a considerable number of persons insecure in life."  In the varied relations of life there are countless omissions of duty which cannot be characterized as misdemeanors.  Section 1530 refers to such duties as are directed by statute.

[7] The keeping of a door locked, bolted, and fastened in a factory during working hours is a violation of statutory law. If in that way the defendants rendered a considerable number of persons insecure in life, they maintained a public nuisance according to the terms of section 1530, which provides that a public nuisance consists in unlawfully doing an act which in any way renders a considerable number of persons insecure in life. The Penal Law provides that one who maintains a public nuisance is guilty of a misdemeanor. The allegations of this count charge that the defendants, while engaged in the commission of a misdemeanor, feloniously caused the death of the decedent.

The demurrer to the third count of the indictment is disallowed.

The fourth count of the indictment charges the defendants with manslaughter in the second degree. The allegations of this count are little else than general allegations of negligence and legal conclusions. They contain no statement of the facts and circumstances which constitute the offense with which the defendants are charged. The demurrer to this count is allowed.

The fifth and sixth counts charge the defendants with manslaughter in the second degree. They set forth the alleged commission of unlawful acts by the defendants and their omission to perform certain duties, with the result that the defendants are charged with culpable negligence.

The counts further allege that by reason of the defendants' gross and culpable negligence the deceased was prevented from leaving the factory in safety when a fire broke out. It is further alleged that through the culpable negligence of the defendants the fire spread with great speed and violence through the factory and allegations are set forth to sustain these charges. Whether the decedent was burned to death through the culpable negligence of the defendants is a question of fact for the jury.

The demurrers to the fifth and sixth counts are disallowed.

The demurrers to the indictments and all the counts therein are disallowed, with the exception of the demurrers to the fourth count, which are allowed.