# COUNTY COURT—KINGS COUNTY,
## April, 1916.

### THE PEOPLE v. CELIA DIAMOND.

(95 Misc. 114.)

INDICTMENT FOR MANSLAUGHTER—VIOLATION OF LABOR LAW—CRIMINAL
RESPONSIBILITY OF OWNER OF TENANT FACTORY FOR DEATH OF ONE AS
RESULT OF FIRE THEREIN—OMISSION TO DISCHARGE DUTY UNDER
LABOR LAW.

An owner of a "tenant factory" within the meaning of the Labor
Law who may not personally participate in the violation of said stat-
ute or who may be without knowledge of its violation by his or her
agent may be guilty of a misdemeanor in failing to affirmatively see
that the provisions of the statute are complied with in respect to his
or her property.

An indictment charging manslaughter in the first degree and man-
slaughter in the second degree in separate counts against the owner
of a tenant factory within the meaning of the Labor Law and his
agent in charge of said building having the supervision, direction and
control thereof, in which said building a fire occurred, after alleging
that an individual was "burned, suffocated and died as a result of the
injuries thus received," sets forth that the injuries and death were due
to acts of omission of defendants and sufficiently alleges in what re-
spect defendants failed in the discharge of their duty under the Labor
Law to decedent, and defendants are thereby apprised of the particular
acts of omission with which they are charged when read in connection
with the preceding allegations in said count of the indictment for
manslaughter in the first degree, a demurrer to the indictment on the
ground that it does not appear upon its face that either of the crimes
is charged and that the facts stated do not constitute either of the
crimes charged will be overruled.

DEMURRERS to indictments.

*James C. Cropsey*, District Attorney, for People.

*Martin T. Manton*, for defendants.

DIKE, J. :

The defendants have been duly indicted by a grand jury of the county of Kings, charged with the offenses of manslaughter in the first degree and manslaughter in the second degree, in three separate indictments. Each of these indictments is practically identical with the others, except as regards the name of a different deceased person in each indictment. These indictments grew out of a fire occurring in the factory building at 285 North Sixth street, in the borough of Brooklyn, on November 6, 1915. The defendants Celia Diamond and Edward L. Diamond alone have interposed demurrers and upon these grounds: *First.* That it does not appear upon the face of the indictments that the crime of manslaughter in the first degree and manslaughter in the second degree is alleged or charged in said indictment. *Second.* That the facts stated in said indictment do not constitute the crime of manslaughter in the first degree and manslaughter in the second degree.

The indictments must be analyzed with a view to determining whether they conform to section 275 of the Code of Criminal Procedure. " The indictment must contain: A plain and concise statement of the act constituting the crime, without any unnecessary repetition."

It is fundamental that the defendants should be apprised by the indictment of the charge against them; that the indictment must concisely state both the crime and the acts constituting it. The obvious object is that the charge should be set forth with such certainty and sufficiency as to enable the defendant to prepare for trial, and to protect them against a second prosecution for the same offense. Otherwise, a demurrer should be upheld. The first count in the indictment charges manslaughter in the first degree. The section of the Penal Law defining the offense as herein charged is as follows:

" § 1050. Such homicide is manslaughter in the first degree, when committed without a design to effect death; (1) By a

person engaged in committing, or attempting to commit, a misdemeanor, affecting the person or property, either of the person killed, or of another."

The indictments describe the building as " five stories in height, separate parts of which were occupied and used by different persons, companies and corporations as tenants and some of which parts were used as factories and were factories within the meaning of the provisions of the Labor Law of the state of New York. It is further alleged in said indictments that the defendant Edward L. Diamond was the agent.in charge of said building and property for the owner, the defendant Celia Diamond, and had and exercised supervision, direction and control thereover.

It is charged that the defendants caused death through a failure to comply with the provisions of the Labor Law. The premises in question may be clearly constructed a " tenant factory " within the meaning of the Labor Law. By section 94 of the Labor Law, although not an occupant of the building, the owner is made responsible for its condition. " The owner, whether or not he is also one of the occupants, instead of the respective lessees or tenants, shall be responsible for the observance and punishable for the non-observance of the following provisions of this article, anything in any lease to the contrary notwithstanding, namely, the provisions of sections * * * 79, 79a, 79b, 83a, 83b * * *." Any such violations are made misdemeanors and are punishable as such by section 1275 of the Penal Law.

Counsel for the defendants urges that there is nowhere in the indictments a clear specification of the offense of which the prosecution accuses these defendants; that the indictments are defective in that they fail to allege all the acts constituting the crime. But in the case of a misdemeanor, under the authorities, it does not seem to me that it is essential that the misdemeanor offense should be pleaded with the same fullness and

particularity when it is involved incidentally as a part of another offense as a felony, as would be necessary if it were the sole offense charged. People v. Willett, 102 N. Y. 251; People v. Giblin, 115 id. 196.

The indictment, after alleging that an individual was " burned, suffocated and died as a result of the injuries thus received," sets forth that the injuries and death were due to acts of omission of the defendants, stating several general particulars, and, finally, that the defendants failed to " keep unlocked, unbolted and unfastened all doors leading into and out of every factory in said building and every door thereof while said employees were working therein and during working hours," and, finally, specifically alleging that the defendants " permitted and allowed the door at the head of the flight of stairs leading from the fourth floor of said building to the third floor thereof—this flight of stairs being a portion of the stairway above referred to—to be and remain locked, bolted and fastened during working hours, and while the employees were at work in said building." Certainly it seems to me that these allegations sufficiently set forth in what respect the defendants failed in the discharge of their duty under the law to the deceased, and it would certainly appear that the defendants åre apprised thereby of the particular acts of omission with which they are charged when read with all the preceding allegations in this court.

In the admirable opinion of Judge O'Sullivan in the case of People v. Harris, 74 Misc. Rep. 353, which case is compelling authority to sustain the counts of these indictments, he says (at p. 359): " For the protection of employees the law has placed upon the employer an obligation to leave all doors leading to his factory unlocked during working hours. There is no question of the Legislature's intention when it declared that all the doors shall open outwardly. A locked door opens neither inwardly nor outwardly. If any door leading to the factory was locked and bolted during working hours, the law was violated."

There is considerable discussion in the briefs, pro and con, regarding section 80 of the Labor Law. While it does appear that section 80 had been repealed, it also would appear that the provisions of that section had been continued and carried into section 79c of the Labor Law. As the indictments plead the offense in the language of section 79c, it would seem to me to be sufficient. Engleheim v. Ill. Surety Co., 85 Misc. Rep. 588. A reading of the Labor Law convinces me that the conduct of one charged as in this indictment may be simply that of omission on the part of an owner or agent to do a certain prescribed thing.

In respect to the charge of manslaughter while engaged in the commission of a public nuisance, it seems to me the case of People v. Harris, *supra*, would make the allegations of this indictment sufficient.

The argument that because the indictment fails to show criminal intent on the part of the defendants, they are insufficient, seems to me to be without merit. The case of People v. Ccanlon, 13 App. Div. 528, relied upon, among others, to support this contention, can be clearly distinguished. There, an owner of an automobile, although riding in the car, was held guiltless of the crime of manslaughter when the chauffeur, through a collision, caused the death of one in another vehicle. In the management of an automobile the operator is the one who preeminently must bear the responsibility for the consequences of its operation in the absence of proof of specific instructions by the master. To hold that the people must allege and prove intent, it seems to me, would make a dead letter of all this legislation and rob it of its vitality.

The authorities would seem to clearly uphold the proposition that an owner who may not personally participate in the violation of the law, or may be without knowledge of its violation by his or her agent, may be guilty of a misdemeanor in failing to affirmatively see that the provisions of the Labor Law are

complied with in respect to his or her property. That very contention has been upheld in the Second Department in the case of People v. J. Albert & Son, 165 App. Div. 928. In that case the defendant, as owner and occupant of one of the floors of a factory building, was charged with having bolted and fastened, during working hours, a door leading from the factory where a certain number of people were employed. An appeal to the Appellate Division was taken from a judgment of conviction. A reargument was ordered by the court upon the sole question whether the master is liable criminally for the acts of the servant in locking the door in the master's absence without general or specific instructions upon his part that it should be done. The judgment of conviction was affirmed after the reargument.

Nor do I see that under the law of this state the point that this was a fault of omission rather than of commission can prevail. In some states such a distinction would be possible. It seems to me that under our statute there are no exceptions, but that any one would be guilty of manslaughter who, while engaged in the commission of a misdemeanor, brings about the death of another irrespective of the fact that it was *malum prohibitum* or *malum in se*.

As to whether the pleader has shown any connection between any casual acts of omission of these defendants as set forth and the death alleged to have been caused by such omissions, I feel that the allegations are sufficient from the point of view of the indictment. The test here is rather upon the proof. And, likewise, as to whether the Diamonds can be held to have committed homicide by reason of the death of any persons occurring while in the commission of a misdemeanor which death they did not cause; and that facts must be shown that the Diamonds did cause death; this again, is a question of proof rather than of pleading, and the allegations as to this I hold to be sufficient.

The obvious intent of the legislature, under the Labor Law, was to fix and determine the obligations of a property owner,

and the power of the legislature was never more strongly shown than when it holds an owner of a building, although absent, and, indeed, without knowledge of the acts of omission or commission, responsible for that situation.  Grievous and onerous as is the burden upon owners and agents of owners of property under this law, especially relating to acts of omission, as in this case, followed by the serious situation of a charge of manslaughter, still it is only by the enforcement of such laws that careless landlords and lessees would be stimulated to take such measures in following the law as to relieve them of such a liability.  It intended to, and did, prescribe in this law punishment for violations thereof, so as to hold an owner to the keen care of his property where human life is in danger.  " Responsibility prevents crime " was said by Burke, and while, perhaps, the phrase is general, still it contains the spirit of laws which seek to spur owners and those in charge of property to greater care and to discourage them from dereliction of duty.

As to any arguments upon the degree of culpability between the owner's or agent's guilt and that of one actually in charge of the premises in occupation and management thereof, those arguments are rather to be addressed to a petit jury who would, after hearing all the evidence, be in a position to decide as to such degrees of guilt.

A reading of the various sections of the Labor Law which have been discussed in this case would indicate the evident intent of the legislature in this very elaborately constructed law, to definitely and expl citly fix and determine the parties who should be held responsible for any infraction of the law.  Parties are defined and penalties are provided for omissions of these parties to follow the law as laid down.  It is a serious obligation that devolves upon the owner of property under this law, but it seems to me that the legislature intended to fix beyond all argument where the burden should be placed.  The responsibility for jeopardizing human life should be fixed and that

without vagueness or uncertainty. To hold that an owner of premises, because he was not at the same time an occupant thereof, is therefore free from responsibility for consequences where he had omitted a clearly prescribed condition, would be placing a premium upon careless landlords and rendering immune those who fail to adopt and provide those things required under the law.

I have considered the other points raised, but for the reasons stated above, I overrule the demurrers, interposed by the defendants Celia Diamond and Edward L. Diamond to this indictment, and this to apply to the other indictments.

Demurrers overruled.