855 A.2d 27

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Gerald John DELBRIDGE, Appellant.**

Supreme Court of Pennsylvania.

Argued April 10, 2002.

Filed Sept. 25, 2003.

644

646

---

Mark M. Mack, Esq., Kingston, Thomas A. Pavlinic, Esq., (argued), *pro hac vice*, Annapolis, MD, on brief, for Gerald John Delbridge.

David M. McGlaughlin, Esq., Philadelphia, for PA Assoc. of Criminal Defense Lawyers.

David W. Lupas, Esq., Ingrid Susan Cronin, Esq., Frank P. Barletta, Esq., Wilkes Barre, for Commonwealth of Pennsylvania.

BEFORE: ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## *OPINION*

Justice CAPPY.

This appeal raises the question of whether "taint", that is, the implantation of false memories or distortion of actual memories through improper and suggestive interview techniques, is a subject properly explored during a hearing testing the competency of a child witness in sexual abuse cases. Our grant of allocatur extends to the question of whether the trial court committed certain procedural errors regarding the conduct of the competency hearing itself, if those errors impacted the decision on competency, the trial court's rulings on the admissibility of expert testimony as to the reliability of the hearsay statements of the child witnesses, and the admissibility of the hearsay statements made by the child witnesses. Upon our consideration of these issues, and for the reasons set forth herein, we direct that the case be remanded for a new competency hearing.

Appellant, Gerald John Delbridge, was convicted of sexually assaulting his children between June 1, 1997 and January 14, 1998. The victims of the assault were A.D., born August 5, 1991, and her brother L.D., born September 3, 1993. The time frame of the assaults corresponds to the period when Appellant and his wife, Deborah Delbridge, were experiencing serious problems in their marriage. Although the Delbridge family was still residing in the same house, Appellant and Mrs. Delbridge were no longer sharing a bedroom. A.D. began sleeping with Appellant in the master bedroom while Mrs. Delbridge slept either on the couch or in L.D.'s bedroom. Throughout this time period Mrs. Delbridge became increasingly worried about A.D. as the child began exhibiting behavioral problems at home.

In January of 1998, Mrs. Delbridge received a telephone call from A.D.'s kindergarten teacher. A.D. has a speech impediment and is developmentally slow, however, the teacher reported regression in motor skills and academics along with aggressive behavior by A.D. towards her classmates. This information, coupled with her own concerns about A.D.,

prompted Mrs. Delbridge to arrange counseling sessions for A.D. with a psychologist, Linda Keck (at the time the sessions began Mrs. Keck was Ms. Colbert). About the same time A.D.'s behavioral problems were being addressed, Appellant was forced to vacate the family residence when Mrs. Delbridge obtained a Protection From Abuse Order on January 14, 1998.[1] *See generally* 23 Pa.C.S.A. § 6101 *et seq.*

At some point in the spring of 1998 Mrs. Delbridge and the children left the family home and moved into a residential unit at Layfette Court in Hazelton, Pennsylvania. At the Layfette residence they were neighbors to Lisa Rodriguez and her two children, a girl and boy, each about the same age as A.D. and L.D. The children became playmates and A.D. was a regular visitor to the Rodriguez home.

On May 13, 1998, Mrs. Delbridge picked A.D. up after school. On the way home A.D. told Mrs. Delbridge "Daddy touched my 'tee-tee'".[2] Mrs. Delbridge did not explore the specifics of this statement, as she was concerned with allaying A.D.'s immediate fears that Mrs. Delbridge would be angry with her. Upon arriving home, A.D. went to the Rodriguez home where she repeated to Mrs. Rodriguez the statement that "Daddy touched my 'tee-tee.'" A.D. made similar statements to Mrs. Rodriguez on other occasions as well. While A.D. was with Mrs. Rodriguez, Mrs. Delbridge placed a call to Mrs. Keck, leaving her a message about A.D.'s revelation. A.D. had a therapy session with Mrs. Keck on May 18, 1998. At that session, when asked by Mrs. Keck to repeat what she had told her mother, A.D. responded "Daddy touched my 'tee-tee' and his friend touched me in the butt." [3]

1. During the events that culminated in the Protection From Abuse Order, Mrs. Delbridge and the children became acquainted with State Trooper Stephen A. Zellner. The nature of the friendship between Trooper Zellner, A.D. and L.D. is discussed by Appellant in his allegations of error as developed *infra.*

2. "Tee-tee" is the word A.D. and L.D. use when referring to a vagina or penis.

3. Although A.D. frequently stated that a friend of Appellant also touched her in an inappropriate manner the record offers no further information as to this third person.

The allegations of possible sexual assault were referred to the Pennsylvania State police. Trooper Peter Salerno conducted interviews of A.D. and her brother L.D. Trooper Zellner was present during the interviews conducted by Trooper Salerno with A.D. and L.D. A.D. told Trooper Salerno that she watched movies with Appellant, where people were naked and kissing. A.D. also told the Trooper that Appellant touched her "tee-tee" and her butt with his fingers. A.D. stated that she took showers with Appellant and that his "tee-tee" was hard. Initially L.D. denied that Appellant ever touched him other than spanking him on the butt. Eventually, L.D. told Trooper Salerno that he watched movies with Appellant where naked people were kissing, and that Appellant touched his "tee-tee" with a finger and stuck a finger in L.D.'s butt. Charges were filed against Appellant as to criminal conduct involving both children.

Prior to trial, Appellant filed motions contesting the testimonial competency of A.D. and L.D. Appellant asserted that given their youth, the children did not have the mental capacity to perceive the events at the time they occurred and accurately recall them. At the time of the assaults, the children were ages six and four; they were seven and five at the time of trial. Additionally, Appellant alleged that the children's memory of the events had been tainted by repeated and suggestive interviews. Finally, he alleged that the competency of the children was highly suspect as they were subject to abnormal influence by their mother who suffered from paranoia over her own sexual victimization as a child. (Pretrial Memorandum in Support of Motions to Determine Competency of Minor Witnesses and & Request For a Taint Hearing, Original Record at 23).

As evidentiary support for the allegations of taint, Appellant pointed to the following facts. First, in one of the hearsay statements attributed to A.D. by Mrs. Rodriguez, A.D. stated that when Appellant touched her "tee-tee" she could not tell anyone because she was still in diapers. Appellant asserts that this statement creates the incredible inference that A.D. could recall events that occurred while she was an infant.

Second, when Trooper Salerno conducted his interviews of A.D. and L.D., he was accompanied by Trooper Zellner in a blatant attempt to pressure the children as Trooper Zellner was well known to, and trusted by, A.D. and L.D. Appellant asserts that Trooper Zellner was designated as the guardian angel for the children and that the children were told he would protect them from Appellant, and that this was a deliberate ploy by the interviewers to vilify Appellant in the eyes of A.D. and L.D. Finally, Appellant claims that their mother influenced the children's allegations of abuse. According to Appellant, a family member had victimized Mrs. Delbridge during her own childhood and this victimization caused Mrs. Delbridge to be paranoid regarding sexual behavior. In support of this point, Appellant references a previous incident, on June 15, 1994, where Mrs. Delbridge took A.D. to Berks County Children and Youth Services reporting her concern that the child, who was two years old at the time, was acting out sexually. During the interview Mrs. Delbridge revealed that she had been the victim of sexual abuse as a child and that she could not distinguish sexually appropriate behavior in her own children. The counselor was concerned for Mrs. Delbridge and recommended that she seek counseling. A.D. made no statements to the counselor at that time. The investigation in Berks County concluded with a finding of no abuse on June 23, 1994.

In addition to the above arguments, Appellant planned to present expert testimony to support his allegations of incompetency and taint regarding the child witnesses. To that end, Appellant applied for a specific date for the hearing on the motion. The President Judge of Luzerne County, Judge Joseph M. Augello, granted the Motion for Specific Date, and the hearing was set for May 10, 1999. Appellant subpoenaed his out-of-town expert witness, Larry M. Davis, M.D., for May 10, 1999. The Honorable Ann H. Lokuta was scheduled to preside over the trial and all pre-trial motions. Despite the Order of Judge Augello setting a specific date for Motions, Judge Lokuta advanced argument on the pre-trial motions to

May 3, 1999.[4] Argument was heard on May 3, 1999 regarding many of the pre-trial motions, and May 5th was set for the competency hearing. Judge Lokuta granted the Commonwealth's motion to preclude expert testimony on the competency of the children, and rejected Appellant's objection as to the alteration of the date set for the competency hearing.

Before the competency hearing began, the Commonwealth moved to exclude Appellant from being physically present during the testimony of the children. Over objection of Appellant, the motion was granted. Appellant requested leave to cross-examine the children about the particulars of the allegations at issue. The trial court denied Appellant's request to examine the children as to the specific factual allegations of sexual abuse. The trial court also rejected Appellant's request to explore the nature of the interviews through which the children revealed the information regarding the sexual abuse claims. The trial court limited the competency hearing to questions examining the ability of the children to understand the difference between truth and non-truth, the general capacity to remember and the ability to communicate that memory.

In their testimony at the competency hearing, the children displayed some confusion in memory. A.D. had difficulty

4. It should be noted that Appellant and the District Attorney each filed several pre-trial motions. In addition to the motion involving competency and raising the issue of taint, Appellant filed discovery motions seeking the in-patient psychiatric records of A.D. from a hospitalization of the child in August of 1998. Appellant filed a motion seeking psychological examinations of each of the children and their mother. Appellant moved to sever the charges as to each child. A motion to compel a further Bill of Particulars was also presented. In addition, Appellant moved to preclude the introduction of any hearsay statements made by the children. Appellant was granted a hearing on the issues of competency and the admissibility of the hearsay statements; all other motions were denied. The District Attorney filed a motion seeking to preclude the expert testimony of Dr. Davis as to the competency of the minors, and a Motion in Limine to preclude introduction of any evidence regarding Mrs. Delbridge's prior history of sexual assault during her childhood, as well as the records pertaining to an interview at Berks County Children and Youth Services in 1994 wherein Mrs. Delbridge reported the possibility that A.D., then two years of age, was being sexually abused. The Commonwealth's motions were granted.

remembering the name of her school and which teacher she had in first grade as opposed to kindergarten. L.D. could not recall his address nor distinguish a town from a state. However, the children displayed an understanding of telling the truth and the consequences of not telling the truth: if they did not tell the truth they would be placed in "time out" and the judge would be "mad". Each child displayed an understanding of the distinction between reality and fantasy, identifying their favorite cartoons as not real. A.D. and L.D. each recalled a past event, such as a previous Christmas celebration or a birthday, and remembered a gift received or an activity that occurred. A.D. and L.D. each displayed an ability to communicate about a remembered event. At the conclusion of the hearing, the trial court found that the children were legally competent to testify.

The hearing on the admissibility of the hearsay statements commenced on May 10, 1999. Prior to taking testimony, Appellant renewed his objection to the competency of the child witnesses. Appellant requested that the trial court reconsider its ruling and permit expert testimony on the question of competency. The trial court denied the motion for reconsideration. Appellant requested that his expert, Dr. Davis, be permitted to testify as to the reliability of the hearsay statements of the children. The court entertained voir dire of Dr. Davis to assess the admissibility of his proffered testimony. At the conclusion of voir dire, the trial court found that Appellant had failed to establish the validity and accuracy of the proposed field of expertise—assessing the reliability of hearsay statements by child sexual abuse victims—and that Dr. Davis could not be qualified as an expert in this proposed area of expertise.[5] The hearing continued with an examination of the persons who would testify as to the hearsay statements of the children. The court considered the context in which the various statements were made and the content of the statements. The trial court found that the hearsay state-

---

**5.** The trial court assessed the proffered expert opinion and the qualifications of the expert himself according to the test set forth in *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923).

ments made by A.D. and L.D. to Linda Keck, Lisa Rodriguez, Deborah Delbridge and Trooper Peter Salerno were admissible.[6]

The matter then proceeded to trial before a jury. All the evidence against Appellant was testimonial, coming either in direct testimony from A.D. and L.D, or through hearsay statements the children made to various adults regarding the sexual assaults. Appellant was convicted of two counts each of Endangering the Welfare of Children, Corruption of Minors, Aggravated Indecent Assault and Indecent Assault.[7] The total term of incarceration imposed on all charges was 72 to 172 months. An appeal was perfected from the judgment of sentence and the Superior Court affirmed that judgment. This court granted allocatur primarily to consider whether taint is a legitimate avenue of exploration regarding the competency of a child witness. The grant of allocatur extended to related questions raised by Appellant within the context of the competency hearing itself and the rulings on the admissibility of the hearsay statements of the child witnesses.[8]

Appellant urges this court to recognize the concept of taint, and to permit examination of possible taint in a competency proceeding, as taint impacts the fitness of a child witness to testify about independent events. Appellant asserts that taint

---

6. There was one additional witness, Quinten Thomas Novinger, M.D., a pediatrician who examined A.D. for physical signs of abuse. The Commonwealth sought to call Dr. Novinger regarding hearsay statements made by A.D. during the physical examination. Due to scheduling difficulties, a ruling on the admissibility of Dr. Novinger's testimony was delayed until trial. At that time, in an in camera hearing, the trial court found that Dr. Novinger could not testify to statements made by A.D. during his physical examination of the child, as those statements were intentionally elicited through leading questions put to A.D. by Dr. Novinger.

7. These convictions correspond to the following Crimes Code sections: 18 Pa.C.S.A. §§ 4304, 6301(a), 3125(7) and 3136(a)(7), respectively.

8. Our standard of review of a trial court ruling on competency is for an abuse of discretion. *Rosche v. McCoy*, 397 Pa. 615, 156 A.2d 307 (1959). This same standard also applies to the related evidentiary rulings made by the trial court, which are currently before us. *Commonwealth v. Wallace*, 522 Pa. 297, 561 A.2d 719 (1989).

is a legitimate question when considering the competency of young children, as they are peculiarly susceptible to the implantation of false memories by biased interviewers and suggestions imposed by trusted authority figures. Appellant urges this court to permit the introduction of expert testimony on the question of taint. Appellant relies heavily upon the decision of *State v. Michaels*, 136 N.J. 299, 642 A.2d 1372 (1994) to support his position. In particular, Appellant argues that there is significant evidence of taint in this case given the tender age of the children, the vilification of Appellant, the bias of the social and law enforcement interviewers and the unique circumstance of the mother's prior victimization and its effect upon the children. Appellant claims prejudice by the trial court's refusal to permit exploration of the question of taint in the competency hearing given the facts of this case.

Appellee, the Commonwealth, counters by asserting that the arguments raising the specter of taint are no more than an attempt by Appellant to introduce expert testimony challenging the credibility of the child witnesses. Relying upon *Commonwealth v. Dunkle*, 529 Pa. 168, 602 A.2d 830 (1992), the Commonwealth asserts that the proffered expert testimony was properly excluded, as it does not speak to a subject that required expert edification. Additionally, the Commonwealth asserts that there is no basis to find that the theory of taint has gained general acceptance within the relevant scientific and/or law enforcement communities. Finally, the Commonwealth argues that there is no evidence to support Appellant's allegation of taint in this case, and that the trial court did not abuse its discretion in finding A.D. and L.D. competent to testify.

In order to resolve the questions presented we must first decide if evidence of taint is admissible, if it is admissible, we must determine if a competency hearing is the appropriate venue for considering evidence of taint, and then finally, we must consider whether it is proper for the trial court to admit expert testimony on the question of taint.

Defining taint is a prerequisite to resolving these questions. The core belief underlying the theory of taint is that a child's

memory is peculiarly susceptible to suggestibility so that when called to testify a child may have difficulty distinguishing fact from fantasy. *See* Josephine A. Bulkley, *The Impact of New Child Witness Research on Sexual Abuse Prosecutions,* in *Perspectives on Children's Testimony,* 208, 213 (Stephen J. Ceci *et al.* eds, 1989). Taint is the implantation of false memories or the distortion of real memories caused by interview techniques of law enforcement, social service personnel, and other interested adults, that are so unduly suggestive and coercive as to infect the memory of the child, rendering that child incompetent to testify. *See,* Julie Jablonski, *Assessing the Future of Taint Hearings,* 33 Suff. J. Trial & App. Adv., 49, 50 (1998).

As the questions presented here are of first impression in this Commonwealth, we turn to our sister states for amplification of the issue of the recognition of taint and the proceedings used to explore that concept. Although the question of taint has not been widely reviewed, several jurisdictions have found taint to be a relevant consideration in the pre-trial assessment of the admissibility of the testimony of child witnesses in cases of child sexual abuse claims. As referenced extensively by Appellant, the New Jersey Supreme Court undertook a thorough analysis of the concept of taint in its decision in *Michaels.* Other states, following the New Jersey lead, have found the idea of taint relevant in a pre-trial assessment of the admissibility of the proffered testimony of a child witness. *See Fischbach v. State,* No. 245, 1995, 1996 WL 145968 1996 Del. LEXIS 80 (Del. Mar. 15, 1996) (court agreed that a suggestive interview of a sexual assault victim may cause the victim's memory to become tainted); *In the Matter of Zachary Sequin,* No. 216602, 2000 WL 33418856, LEXIS 648, (2000), *app. den.* 617 N.W.2d 696 (Mich.2000) (taint was recognized as a legitimate concern within the context of an action by the state to terminate parental rights after allegations of sexual abuse by the father); *In the Matter of the Dependency of A.E.P.,* 135 Wash.2d 208, 956 P.2d 297 (1998)(the question of taint can be pursued at the time of the competency hearing for a child witness); *English v. Wyoming,* 982 P.2d 139 (Wyo.

1999)(taint could legitimately be explored in a competency hearing where some evidence of improper or suggestive interview techniques was presented).

Three jurisdictions have implicitly or explicitly rejected the idea of exploring taint when examining the admissibility of the proffered testimony of child witnesses. The Court of Appeals in Alaska has issued two opinions on the subject, rejecting defense requests to examine child witnesses for potential taint. *See Nelson v. State,* No. A–6358, No. 4147, 1999 WL 33911988, 1999 Alas.App. LEXIS 130 (Alaska Ct.App. Nov. 10, 1999)(proffered expert testimony on taint would not satisfy the test for admissibility of scientific evidence under either the *Frye* or the less restrictive *Daubert* test); *Schumacher v. State,* 11 P.3d 397 (Alaska Ct.App.2000)(denial of a pretrial hearing on taint does not offend due process). Kentucky and Ohio have also rejected defense requests to explore potential taint of a child witness. *See Pendleton v. Kentucky,* No. 1999–SC–1092–MR, 83 S.W.2d 522, 2002 WL 1307418, 2002 Ky. LEXIS 113 (2002)(as the competency bar is so low, depending only on a child's level of development and the subject matter at hand, the court found no reason to explore taint); *State v. Olah,* 146 Ohio App.3d 586, 767 N.E.2d 755 (Ohio Ct.App. 2001)(with no discussion as to the legal merits of the issue, the Court of Appeals of Ohio rejected a request for a taint hearing).

Finally, the State of New York has issued divergent trial court opinions on the issue. *See People v. Michael M.,* 162 Misc.2d 803, 618 N.Y.S.2d 171 (N.Y.Sup.Ct.1994)(taint can be explored in the context of a motion to suppress); *People v. Jones,* 185 Misc.2d 899, 714 N.Y.S.2d 876 (N.Y.Sup.Ct. 2000)(taint hearing denied, as it would create undue hardship upon the victim).[9]

9. In this case we are presented with a pre-trial request to explore the concept of taint, thus our review of caselaw from other jurisdictions focuses on cases where the question of taint was presented in a pre-trial motion. We do note that three other jurisdictions acknowledge the concept of taint and permit exploration of the issue, however they do so during trial. In Georgia and New Hampshire expert testimony on taint is admissible at trial, and the impact of taint on the reliability of the testimony is placed before the factfinder for resolution. *See Barlow v.*

In our review of these decisions, we find the discussions of taint by the New Jersey and the Wyoming courts to be the most illuminating. The New Jersey Supreme Court rendered the most extensive decision on the concept of taint in *Michaels*. *Michaels* involved the conviction of a day care teacher on 115 counts involving various charges of sexual assault committed on twenty children in her charge at the Wee Care Day Nursery. On appeal, the court found evidence that the children's accusations were founded on unreliable perceptions or memories caused by improper investigative procedures and that admission of testimony premised upon those accusations could lead to an unfair trial.[10] *Id.* at 1376. In reaching this conclusion, the court acknowledged the problem of relying on scientific and psychological theories in the context of considering the susceptibility of children to manipulative interrogations. The court discussed the tension between the accepted legal standard that children as a class are not suspect witnesses, and the commonly held belief that children are peculiarly susceptible to undue influence. *Id.* The court reviewed the various treatises written and relied upon by the scientific and law enforcement communities regarding the susceptibility of children to coercive interview techniques, and reached its

*State*, 270 Ga. 54, 507 S.E.2d 416 (1998); *State v. Sargent*, 144 N.H. 103, 738 A.2d 351 (1999). It should also be noted that in Georgia and New Hampshire the State is permitted to present expert testimony at trial on the child sexual abuse syndrome as a factor that would aid the factfinder in assessing the credibility of child sexual abuse victims. Maine also permits exploration of taint during trial. *State v. Ellis*, 669 A.2d 752 (Me.1996). Maine does not allow expert testimony on the issue, and restricts discussion of taint to legitimate avenues of cross-examination and argument where there is some record evidence to support the inquiry.

10. During the interviews with the children, the investigator revealed bias towards the defendant, referring to her as a bad person, and telling the children that she was in jail for doing bad things. The children who refused to reveal negative information were forced to continue the interview until the investigator received the answers he wanted. The investigator often conducted the interviews in an adversarial manner with the children and used peer pressure, by telling each child that all the other children had already told him about the bad things that happened. In addition to leading questions, the investigator prompted responses by demonstrating what he thought the defendant had done and then pressuring the children to agree. 642 A.2d at 1385, Appendix.

conclusion as to the concept of taint by judicial recognition. *Id.* at 1378. The *Michaels* court held:

> We therefore determine that a sufficient consensus exists within the academic, profession, [sic] and law enforcement communities, confirmed in varying degrees by courts, to warrant the conclusion that the use of coercive or highly suggestive interrogation techniques can create a significant risk that the interrogation itself will distort the child's recollection of events, thereby undermining the reliability of the statements and subsequent testimony concerning such events.

*Id.* at 1379.

In analyzing the concept of taint as it affects the admissibility of proffered testimony, the New Jersey Court looked at its existing caselaw on the issues of suggestive pre-trial identification techniques, and the admissibility of testimony based on hypnotically induced recollections.[11] As those cases illustrate, evidence may be deemed inadmissible because it was corrupted by the manner in which it was collected. The New Jersey court therefore concluded that taint was equally capable of corrupting the memory of a child witness during the investigation of an allegation of sexual abuse. The court identified various factors for assessing accusations of sexual abuse made by children, however, it cautioned that the list was not exhaustive and that the matter must be analyzed in the totality of the circumstances involved. The factors identified in *Michaels,* are: "(1) the age of the victim, (2) circumstances of the questioning; (3) the victim's relationship with the interrogator; and (4) the type of questions asked." *Id.* at 1381.

Having concluded that in the *Michaels* case some evidence of taint was present; the court remanded the case for a pre-trial hearing on taint and went on to address the contours of such a hearing. The court determined that the defendant carries the initial burden of showing that some evidence exists to invoke a taint hearing. *Id.* at 1383. The burden then shifts to the prosecution to support the admissibility of the proffered

---

11. *See State v. Gookins,* 135 N.J. 42, 637 A.2d 1255 (1994) and *State v. Hurd,* 86 N.J. 525, 432 A.2d 86 (1981).

statements by clear and convincing evidence. *Id.* The court selected the clear and convincing standard to balance the competing interests of safeguarding the defendant's right to a fair trial without imposing so severe a burden on the prosecution as to make it impossible to prove cases of child sexual abuse. *Id.* at 1384. By application of the clear and convincing standard, the court recognized that the burden on the prosecution is to establish that despite the presence of some suggestive or coercive techniques in the manner in which it was gathered, when considered in the totality of the circumstances, the proffered testimony is sufficiently free from contamination, thus outweighing the effects of taint. *Id.* Although expert testimony is admissible on the propriety of the interrogation techniques used, it cannot extend to the ultimate issue of the credibility of the child witness. *Id.* at 1383. The court also opined that even if the testimony is ultimately ruled admissible, expert testimony may be presented at trial to aid the jury by explaining the coercive or suggestive propensities of the interview techniques used. *Id.* at 1384.

The Wyoming Supreme Court found the reasoning of the *Michaels* decision persuasive as to the concept of taint, however it did not find that a separate pre-trial hearing addressing solely the issue of taint was necessary. *English v. Wyoming,* 982 P.2d 139 (Wyo.1999).

The defendant in *English* was accused of taking indecent liberties with a minor. The defendant was a family friend who agreed to baby-sit for B.N.M., a five-year-old and her younger brother, on December 31, 1996 and January 2, 1997. On the first occasion, B.N.M.'s mother bathed the children and dressed B.N.M. in a blanket style sleeper before she left for the evening. Upon arriving home, the mother discovered B.N.M. sleeping in a tee shirt with no underwear. The child explained that she had removed the sleeper because she was hot. On the second occasion, a mutual friend of the defendant and B.N.M.'s mother stopped by the house while B.N.M. was in the defendant's care. This friend observed B.N.M. and the defendant naked in the bathtub. The friend shared his observation with B.N.M.'s mother the next day. The mother spoke

to B.N.M. about the defendant and whether the defendant had touched her while he was baby-sitting. B.N.M. denied anything had happened. The mother continued to question the child, and, becoming desperate, she asked B.N.M. to trade secrets with her. Finally B.N.M. stated that the defendant had played with her "pee-pee". The mother, upset by the statements of B.N.M., became ill. The child then recanted. However, when the mother confronted the defendant in B.N.M.'s presence, the child repeated the statements of improper touching. An investigation of the incident was undertaken by authorities, which ultimately led to the defendant's conviction.

The defendant requested a pre-trial hearing on taint, relying on the decision in *Michaels,* and arguing that B.N.M.'s recollection of the events was unreliable given the suggestive and coercive interrogation by her mother. The trial court denied the request for a taint hearing. On appeal, the Wyoming Supreme Court considered the request for a separate pre-trial taint hearing by first examining the procedures for assessing the competency of a child witness under Wyoming law. Once the competency of a child witness is called into question, Wyoming courts are required to make an independent pre-trial examination to determine competency. 982 P.2d at 145. A child witness will be deemed competent if the trial court determines that the child meets the following five-part test:

> (1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) *a memory sufficient to retain an independent recollection of the occurrence;* (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.

*Id.* (citations omitted) (emphasis added).

The Wyoming court found that the concept of taint was a legitimate inquiry within the scope of existing Wyoming law on competency, as a taint allegation spoke to whether the witness possessed "a memory sufficient to retain an indepen-

dent recollection of the occurrence." *Id.* at 146. As Wyoming law already provided an avenue to explore the question of taint, there was no reason to adopt the *Michaels* approach and require a separate taint hearing to assess the existence and impact of taint on the memory of a child witness. *Id.* However, the court did agree with the New Jersey approach to the extent that the burden is on the defendant to show some evidence that the child's statements were the product of suggestive or coercive interview techniques in order to warrant review of the taint issue within the context of a competency hearing. *Id.*

The Wyoming court concluded that a pre-trial competency hearing exploring the issue of taint was required in *English* as the defendant presented evidence that the allegations of abuse were not spontaneous, but rather had been cajoled from the five-year-old child by the mother's repeated, persistent, and leading questions. *Id.* at 147. There was no discussion regarding the admissibility of expert testimony at the competency hearing.

Having considered the various positions by taken by our sister states on taint, we are persuaded by the courts that permit pretrial exploration of taint, that such an avenue of examination is necessary in those cases where there is some evidence that improper interview techniques, suggestive questioning, vilification of the accused and interviewer bias may have influenced a child witness to such a degree that the proffered testimony may be irreparably compromised. Accordingly, we hold that taint is a legitimate question for examination in cases involving complaints of sexual abuse made by young children.[12]

12. As no expert testimony on taint was admitted at the trial court level, we do not now render any opinion on the acceptance of taint within the relevant scientific or professional communities. Our decision rests upon a review of the opinions of our sister states and the obvious parallel between the admissibility of tainted testimony and other types of evidence obtained by improper investigative techniques. *See Commonwealth v. Nazarovitch*, 496 Pa. 97, 436 A.2d 170 (1981)(examining the unreliability of testimony retrieved through hypnosis); *Commonwealth v. Cephas*, 447 Pa. 500, 291 A.2d 106 (1972)(illegally obtained

The next question is whether a competency hearing is the appropriate venue to explore possible taint of a child witness. To date only New Jersey requires a separate pretrial hearing exclusively on taint. Other courts that allow exploration of taint have found the issue capable of examination within the context of existing legal procedures such as, a hearing probing the competency of the child witness or, within the context of a suppression hearing examining whether the evidence was obtained by improper techniques, and, finally, during the course of the trial itself. *See In the Matter of A.E.P.* and *English v. Wyoming* (taint can be examined in a competency hearing); *People v. Michael M.* (taint can be explored in a suppression hearing); *Barlow v. State* and *State v. Sargent* (taint can be examined at trial), *supra.*

Appellant asserts that a competency hearing is the logical stage in the proceeding to review a question of taint, as taint impacts the reliability of the actual memory of the child witness. Appellee argues that taint is merely a disguised attempt to attack credibility and a competency hearing is not the place for such an attack.

 A decision on the necessity of a competency hearing is addressed to the discretion of the trial court. *Commonwealth v. Washington,* 554 Pa. 559, 722 A.2d 643, 646 (1998). The general rule in Pennsylvania is that every person is presumed competent to be a witness. Pa.R.E. 601(a). Despite the general presumption of competency, Pennsylvania presently requires an examination of child witnesses for competency. *Rosche,* 156 A.2d at 310; Pa.R.E. 601(b). The test for competency of immature witnesses was set forth in *Rosche:*

> There must be (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remem-

evidence is inadmissible unless the original taint is purged by sufficient attenuation).

bering *what it is* that she is called to testify about and (3) a consciousness of the duty to speak the truth.

*Id.* (emphasis in original). The capacity of young children to testify has always been a concern as their immaturity can impact their ability to meet the minimal legal requirements of competency. Common experience informs us that children are, by their very essence, fanciful creatures who have difficulty distinguishing fantasy from reality; who when asked a question want to give the "right" answer, the answer that pleases the interrogator; who are subject to repeat ideas placed in their heads by others; and who have limited capacity for accurate memory.

■ A competency hearing concerns itself with the minimal capacity of the witness to communicate, to observe an event and accurately recall that observation, and to understand the necessity to speak the truth. *Rosche.* A competency hearing is not concerned with credibility. Credibility involves an assessment of whether or not what the witness says is true; this is a question for the fact finder. *Washington,* 722 A.2d at 646. An allegation that the witness's memory of the event has been tainted raises a red flag regarding competency, not credibility. Where it can be demonstrated that a witness's memory has been affected so that their recall of events may not be dependable, Pennsylvania law charges the trial court with the responsibility to investigate the legitimacy of such an allegation. See *Commonwealth v. Rolison,* 473 Pa. 261, 374 A.2d 509 (1977), *cert. denied,* 434 U.S. 871, 98 S.Ct. 215, 54 L.Ed.2d 150 (1977)(allegation that witness is insane will trigger competency hearing); *Commonwealth v. Anderson,* 381 Pa.Super. 1, 552 A.2d 1064 (1988), *appeal denied,* 524 Pa. 616, 571 A.2d 379 (1989)(retarded adult subject to competency consideration); *Commonwealth v. Nazarovitch,* 496 Pa. 97, 436 A.2d 170 (1981)(hypnotically induced testimony raises question of competency).

■ We find particularly influential the decision of the Wyoming Supreme Court in *English* that taint is a matter properly examined during a competency determination as it

goes to the question of whether the child has the memory capacity to retain an independent recollection of the occurrence. *English,* 982 P.2d at 145. Similarly, competency proceedings in Pennsylvania require the trial court to determine if the child possesses an independent memory of an actual event. Accordingly, we hold that a competency hearing is the appropriate venue to explore allegations of taint.

Having determined that taint is a proper subject for inquiry and that such an investigation should occur within a competency hearing, we take this opportunity to define some parameters for conducting a taint inquiry. Taint speaks to the second prong of the competency test established in *Rosche,* "the mental capacity to observe the occurrence itself and the capacity of remembering *what it is* that [the witness] is called upon to testify about." 156 A.2d at 310, (emphasis in original). In order to trigger an investigation of competency on the issue of taint, the moving party must show some evidence of taint. Once some evidence of taint is presented, the competency hearing must be expanded to explore this specific question. During the hearing the party alleging taint bears the burden of production of evidence of taint and the burden of persuasion to show taint by clear and convincing evidence. Pennsylvania has always maintained that since competency is the presumption, the moving party must carry the burden of overcoming that presumption. *Rosche,* at 309. As this standard prevails in cases where the witness's memory may have been corrupted by insanity, mental retardation or hypnosis, we see no reason to alter it in cases where the memory of the witness is allegedly compromised by tainted interview techniques. Further, as the burden in all other cases alleging incompetency is clear and convincing evidence, we will continue to apply that existing legal requirement for cases involving taint. *See Commonwealth v. R.P.S.,* 737 A.2d 747 (Pa.Super.1999) (discussing the standard of review regarding rulings on competency). The clear and convincing burden accepts that some suggestibility may occur in the gathering of evidence, while recognizing that when considering the totality of the circumstances, any possible taint is sufficiently attenuat-

ed to permit a finding of competency. Finally, as with all questions of competency, the resolution of a taint challenge to the competency of a child witness is a matter addressed to the discretion of the trial court. *Washington*, 722 A.2d at 646.

Having found the issue of taint relevant to a competency determination, we need to consider if Appellant has made a sufficient showing of some evidence of taint to justify a new competency hearing. When considering whether some evidence of taint has been presented we look to the totality of the circumstances surrounding the revelation of the allegations of child sexual abuse.

In this case, the children were ages six and four at the time of the alleged abuse. Their ability to recall and comprehend the events that allegedly occurred and then adequately communicate their memories of those events is suspect merely because of their tender years. Then there is the unusual fact that Mrs. Delbridge was herself the victim of child sexual abuse, and the possibility that her experiences may have influenced the course of the investigation. The potential for undue influence in this regard is heightened by reference to Mrs. Delbridge's prior allegations of suspected sexual abuse of A.D. when the child was two years old, allegations that were dismissed as unfounded. Mrs. Delbridge's influence over the children's actual memories of the events in question may also have been enhanced by the fact that she had sole custody of the children at the time the revelations as to abuse came to light.[13] Additionally, during the investigation of the current charges, the children were subject to repeated interviews by various adults in positions of authority: the state police, a psychologist, a social services employee, the district attorney and a pediatrician. The presence of Trooper Zellner during the interviews, not as an investigator, but allegedly as a guardian angel for the children, supports the inference that Appellant was vilified during the interview process. The only available records of the various

---

13. As noted *supra* Appellant and Mrs. Delbridge were separated, their relationship was strained as evidenced by the need for a Protection From Abuse Order removing Appellant from the family home.

interviews is through the notes taken by the adult interviewers as there were no contemporaneous video or audio recordings of the interviews.[14] We believe that Appellant has presented some evidence of taint to justify exploration of that issue at a competency hearing; thus, a remand for a new competency hearing is required.[15]

As we are remanding for a new competency hearing, it is incumbent on this court to consider the admissibility of expert testimony upon remand. Appellant sought to introduce expert testimony on the phenomenon of taint and its impact upon the memory of a child witness. The trial court, relying on *Dunkle, supra,* denied this request, perceiving it as an attack on the credibility of the witnesses. The Superior Court recognized that expert testimony is admissible on the issue of competency, however it affirmed the trial court's ruling in this instance, agreeing that the proposed expert testimony here was addressed to credibility, not competency, and pursuant to *Dunkle* would not be admissible. As the lower courts, and Appellee, rely upon *Dunkle* as authority for excluding expert testimony on taint, it is necessary to review the concerns addressed in that decision.

The defendant in *Dunkle* was charged with sexually assaulting his teenage stepdaughter in 1983. The victim did not report the assault until 1986. During the course of the defendant's jury trial there was testimony concerning the behavior of the victim between 1983 and 1986, and the delay in reporting the assault. The trial court permitted the jury to hear expert testimony regarding the "Child Sexual Abuse

14. This court is not requiring video or audio recordation of interviews; we merely note that no such contemporaneous record of the interview sessions exist in this case. .

15. We realize that there are competing policy considerations inherent in assessing the propriety of a retrospective competency assessment. *See generally Harris Trust & Sav. Bank v. Otis Elevator Co.,* 297 Ill.App.3d 383, 231 Ill.Dec. 401, 696 N.E.2d 697, 702 (1998) (noting, in relation to competency of witnesses, that "there are 'inherent difficulties' in attempting retrospective determination of mental competency even 'under the most favorable of circumstances' " (citations omitted)). We believe, however, that the better practice is to permit such an examination whenever a meaningful hearing can be conducted.

Syndrome" explaining the various behaviors exhibited by sexually abused children, and expert testimony on the reasons why an abused child would delay reporting an incident of abuse. The purpose of the expert testimony was to correlate the behavior of this victim, from 1983 to 1986, to the behavior typical of an abused child, and also to inform the jury that child sexual abuse victims may not always report incidents of abuse promptly. On appeal this court reversed. We determined that the "Child Sexual Abuse Syndrome" had not gained sufficient acceptance in the psychiatric community to warrant admission as expert testimony, and that the testimony itself about the behavior patterns was so speculative that it did not constitute probative and relevant evidence. *Id.* at 834–35. As for the expert testimony on the question of why abused children delay in reporting, we found that expert testimony on this question was unnecessary as the issue was one within the common knowledge or experience of the average juror. *Id.* at 836.

The proffered expert testimony was rejected in *Dunkle* because it was offered to enhance the credibility of the victim by supplying authoritative opinions for the jury to rely on in assessing the behavior of the victim after the assault and the rationale for delayed reporting. The decision in *Dunkle* spoke to the proper role of expert testimony, which is the edification of the factfinder on a question not commonly understood, and reiterated the long held principle that expert testimony is inadmissible on matters within the common knowledge and experience of the factfinder. Credibility is an issue uniquely entrusted to the common understanding of laypersons. The teaching of *Dunkle* is that expert testimony will not be permitted when it attempts in any way to reach the issue of credibility, and thereby usurp the function of the factfinder. As we have addressed *supra*, a question of taint corrupting the actual memory of the witness speaks to competency, not credibility. It is not a question of whether the child is telling the truth, but rather whether the child's memory has been so infected by the implantation of distorted memories so as to make it difficult for the child to distinguish fact from fantasy.

Accordingly, *Dunkle* is not dispositive of the question of the admissibility of expert testimony in a competency hearing regarding taint.

*Michaels* is the only decision to extensively review the scientific, psychological and law enforcement theories behind the concept of taint. It is also the only court to clearly endorse the use of expert testimony in a pre-trial hearing on the issue of suggestive and coercive interview techniques and the impact of such techniques on young children.[16] The other jurisdictions that recognize taint and permit exploration of the issue offer little information about the role, if any, that expert testimony is to play in pre-trial hearings examining the impact of taint on the proffered testimony of a child witness. The discussions in *English, A.E.P, Sequin,* and *Fischbach* seem to conceptualize taint as a factual concern that could lead to the legal conclusion that a child's memory has been corrupted.[17]

A determination of competency involving allegations of taint necessitates review of the manner in which the child's allegations of abuse surfaced and were investigated. In some cases it is conceivable that resolution of this issue could be had through an examination of the factual context of the interview process. It is also conceivable that with certain children, given differences in age, experience, mental acuity and familial circumstances, and considering specifics of the allegations of abuse, and the circumstances surrounding the investigation itself, that expert testimony may be necessary. Further, it is possible that the phenomenon of taint may undergo revision or reconsideration in the relevant scientific, psychological or law enforcement communities that should be brought to the attention of the trial court.

16. The discussion of whether or not taint as a scientific theory would satisfy *Frye* or *Daubert* that the Alaska court engaged in took place in a vacuum as no expert testimony had been presented in that case. *Nelson, supra.*

17. We reiterate, that two of the jurisdictions that engage in review of taint issues during trial do permit expert testimony on that issue. *See Sargent* and *Barlow, supra; contra Ellis.*

■ In Pennsylvania, expert testimony is admissible when a matter in issue is beyond the common knowledge of the factfinder:

> If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Pa.R.E. 702. In a competency hearing, the trial judge must determine the facts and reach a legal conclusion. It is thus the trial judge who must decide if expert testimony will advance a resolution of the question of competency on a case-by-case basis. Accordingly, we will leave to each individual jurist, subject to appropriate review, the decision of whether in any particular case alleging taint expert testimony would assist the court in understanding the evidence or determining a fact in issue during a competency hearing. *R.P.S.* 737 A.2d at 754.

Beyond the question of taint and the related discussion of the contours of a competency hearing exploring that issue, our grant of allocatur in this case extended to certain procedural rulings at the initial hearing on competency and the pre-trial assessment of the admissibility of the hearsay statements A.D. and L.D. made to various adults. Appellant raised three specific procedural claims of error regarding the conduct of the competency hearing itself, and alleges that the trial court's finding that the children were competent to testify was erroneous.

■ First, Appellant asserts prejudicial error by the trial court in moving the date of the competency hearing forward, thus interfering with Appellant's ability to present evidence as to incompetency. An extended discussion of this issue is unnecessary as the order of remand directing that a new competency hearing be convened renders it moot.

■ Second, Appellant argues that it was error to physically exclude him from the competency hearing. The Superior

Court found this issue waived as Appellant failed to present any authority in support of his contention that the trial court erred in excluding him from the competency hearing.[18] In his brief to this court, Appellant offers no rebuttal to the finding of waiver and merely asserts that the prejudice caused by his exclusion is obvious. Given the absence of meaningful advocacy on this issue and the necessity of a remand for a new competency hearing, we believe it imprudent to engage in a discussion of this issue.

Third, Appellant asserts error by the trial court in excluding expert testimony on the question of taint. As set forth above, expert testimony on the issue of competency is admissible at the discretion of the trial court. The trial court's previous ruling excluding the proffered expert testimony was premised on its misinterpretation of *Dunkle*. Consistent with the discussion of this issue *supra*, upon remand it will be left to the discretion of the trial court to entertain the necessity of expert testimony on the possible impact of taint as to the competency of A.D. and L.D. in the instant case.

Additionally, Appellant asserts error by the trial court in concluding that A.D. and L.D. were competent to testify. Appellant argues that the trial court did not have a well-informed basis for reaching this conclusion given its ruling restricting the parameters of cross-examination of the child witnesses during the competency hearing. Specifically, Appellant claims that he should have been permitted to cross-examine A.D. and L.D. as to the details of the alleged assaults, the nature of the acts, and the time, place and manner in which they occurred, in order to test their memory of the events about which they were being called to testify. The Commonwealth responds that Appellant suffered no prejudice

18. The trial court excluded Appellant from the competency hearing relying on *Kentucky v. Stincer*, 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). In that case, the United States Supreme Court found no Confrontation Clause violation where the defendant was excluded from the competency hearing as the defendant was present during the trial testimony of the two minor witnesses and had a full and fair opportunity to cross-examine them on the allegations at issue. As Appellant offers no argument as to the reasons underlying of the trial court ruling, we leave discussion of the legal merits of this question for another day.

by the trial court's ruling in this regard as he was afforded ample opportunity to cross-examine the witnesses on the details of the allegations of abuse at trial. As this issue speaks to the broader question of the legitimate avenues of inquiry when testing the competency of child witnesses, and because further proceedings are necessary in this case, we will address the merits of this allegation of error.

Appellant takes the position that in testing the ability of a child to recall events that he or she is asked to testify on, the competency hearing must extend to an examination of the child witness on the details of the actual event at issue. Appellant maintains that this position is consistent with current Pennsylvania law on the purpose of a competency hearing involving minor witnesses. In support thereof, Appellant relies upon *Commonwealth v. Koehler,* 558 Pa. 334, 737 A.2d 225 (1999), *cert. denied,* 531 U.S. 829, 121 S.Ct. 79, 148 L.Ed.2d 41 (2000), *Commonwealth v. Bishop,* 742 A.2d 178 (Pa.Super.1999), *appeal denied,* 563 Pa. 638, 758 A.2d 1194 (2000), *Commonwealth v. McMaster,* 446 Pa.Super. 261, 666 A.2d 724 (1995), *Commonwealth v. Trimble,* 419 Pa.Super. 108, 615 A.2d 48 (1992), and, *Anderson, supra.*

This body of caselaw cannot be read to directly support such a broad assertion. A competency hearing of a minor witness is directed to the mental capacity of that witness to perceive the nature of the events about which he or she is called to testify, to understand questions about that subject matter, to communicate about the subject at issue, to recall information, to distinguish fact from fantasy, and to tell the truth. *McMaster.* A competency hearing is not an opportunity for extended discovery. Thus, in responding to Appellant's broad assertion as to the scope of cross-examination at a competency hearing, we find that there is no provision in the current caselaw *requiring* an examination of competency to extend to the details of the event at issue.

However, an inquiry on the details of the event may be necessitated if there is some evidence that a witness has no recall of the event in question, or the witness's ability

to recall the event has been corrupted. *R.P.S., supra.* In this case, Appellant presented some evidence that the ability of A.D. and L.D. to recall the events in question was affected by their extreme youth, and that their memory of the events may have been tainted by their mothers' influence upon them and the methods of interrogation by which the information was obtained. As stated above, we find that Appellant met the necessary threshold to trigger an examination of possible taint, impacting the competency of A.D. and L.D. in this case. Although we do not agree with Appellant's broad claim that cross-examination in a competency hearing of a minor must always extend to questions on the details of the events at issue, we do agree that some inquiry into the details of the events as reported by A.D. and L.D. should have been permitted where they were relevant to ferreting out the possibility of taint. As a remand is in order on the issue of competency, we direct that cross-examination of A.D. and L.D. at that hearing be open to legitimate questions as to the details of the events, where the line of inquiry is supported by some evidence demonstrating the link between the actual questions and the alleged taint. We emphasize that such an inquiry cannot evolve into a fishing expedition and reiterate that the parameters of cross-examination on this question, are a matter left to the discretion of the trial court. *Washington, supra.*

The final issue before us concerns the hearsay statements A.D. and L.D. made to third parties, which were admitted pursuant to 42 Pa.C.S.A. § 5985.1.[19] The admissibility of this type of hearsay is determined by assessing the particularized

**19.** 42 Pa.C.S.A. § 5985.1 provides in relevant part:

(a) **General rule.**-An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing physical abuse, indecent contact or any of the offenses enumerated in 18 Pa.C.S. Ch. 31 (relating to sexual offenses) performed with or on the child by another, not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal proceeding if:

(1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) the child . . .

(i) testifies at the proceeding . . . .

guarantees of trustworthiness surrounding the circumstances under which the statements were uttered to the person who is testifying. *See* 42 Pa.C.S.A. § 5985.1. This issue is comprised of several subparts that we will address seriatim.

 Appellant first asserts error by the trial court in denying Appellant the opportunity to cross-examine A.D. and L.D. as to their respective recollections of the statements they made to various third parties. Appellant argues that cross-examination of A.D. and L.D. was necessary to test the accuracy of the statements themselves. In many cases the accuracy of a hearsay statement must be determined without the opportunity to cross-examine the party that uttered the statement. However, where the party is available, and there exists a degree of uncertainty as to the reliability of the facts upon which the hearsay statements turn, it would be prudent to permit examination of the original speaker to test the accuracy of the hearsay statements. Given the possibility of taint impacting the competency of the child witnesses in this case, should taint be shown upon remand, the trial court shall permit Appellant to cross-examine A.D. and L.D. to test the accuracy of the statements they made to third parties.

Appellant also claims that the trial court erred in excluding the proffered expert testimony on the question of reliability of the hearsay statements. At the onset of the pre-trial hearing on admissibility of the hearsay statements, Appellant tendered Dr. Davis as an expert witness on the reliability of hearsay statements made by child sexual abuse victims. Dr. Davis is board certified in psychiatry and neurology, a Diplomat for the American Board of Forensic Examiners, a Diplomat of the American Board of Forensic Medicine, and a Diplomat of the American Board of Clinical Sexology. After a thorough voir dire on his qualifications, the trial court found that Dr. Davis's proposed area of expertise was not sufficiently accepted in the relevant scientific community to permit acceptance of expert testimony thereon. Appellant offers a cursory argument on this point, merely stating that the trial court misapplied the *Frye* standard when assessing the proposed testimony of Dr. Davis as to the reliability of the hearsay statements, citing to

674

the New Jersey decision in *State v. Krivacska*, 341 N.J.Super. 1, 775 A.2d 6 (2001), *cert. denied*, 535 U.S. 1012, 122 S.Ct. 1594, 152 L.Ed.2d 510 (2002).

 The admission of expert testimony is a matter addressed to the discretion of the trial court. *Dunkle supra.* The subject an expert will testify on must be sufficiently established to have gained general acceptance in the particular field to which it belongs. *Id.* (referring to the so-called "*Frye* standard"). As stated by Dr. Davis, the subject of his proposed testimony was as follows:

> I believe that I'm testifying on the quality of information received and transmitted by hearsay witnesses to this Court based on the competence of the alleged victim in reporting the events that occurred to him and her. . . . Reliability are [sic] factors that speak to the alleged victims' . . . accuracy and accuracy of the information that they are relating. . . . Reliability is the perception of that child's testimony by others . . . .

Notes of testimony, May 10, 1999 at 171–174. Dr. Davis offered no literature, research or other scientific support for his proffered area of testimony. The voir dire revealed that Dr. Davis' primary clinical experience was in the field of treating adult sexual offenders and adults suffering sexual dysfunction. After examining the voir dire of Dr. Davis, we cannot conclude that the trial court abused its discretion in rejecting his proposed expert testimony. This conclusion is not altered by our review of the New Jersey decision in *Krivacska*. That case dealt with the application of the taint principles set forth in *Michaels*. The expert testimony referenced therein dealt exclusively with the issue of taint and not the reliability of the hearsay statements of the minor witnesses.

 In his last allegation of error Appellant challenges the trial court's determination on the admissibility of all hearsay statements made by A.D. and L.D. to the various adult witnesses who testified at Appellant's trial. Under the statutory provision for the admission of hearsay statements made

by minors regarding their own victimization, 42 Pa.C.S.A. § 5985.1, a trial court must assess the relevancy of the statements and their reliability in accordance with the test enunciated in *Idaho v. Wright, supra.* Although the test is not exclusive, the most obvious factors to be considered include the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age and the lack of a motive to fabricate. 497 U.S. at 821–822, 110 S.Ct. 3139.

Appellant asserts that given the evidence of taint the statements fail to meet the requirements for trustworthiness established in *Idaho v. Wright.* In making this argument Appellant focuses on the improper manner in which the children were interrogated about the abuse and the possibility that the memories of the children were distorted by the overlay of false memories. This assertion cannot adequately be assessed on the current record as Appellant was precluded from presenting any evidence of taint, and was estopped from arguing taint as a factor impacting the reliability of the hearsay statements at issue. Following remand, this court will be in a position to address the assertion that the reliability of the hearsay statements was impacted by taint. Accordingly, we hold disposition of this final issue until after the trial court reconsiders the competency question.

For the reasons stated herein, because we find that Appellant has presented some evidence that A.D. and L.D. may not have been competent to testify because of taint, we remand this matter for a new competency hearing in a manner consistent with this opinion. The trial court is directed to hold a new competency hearing and transmit an opinion on the impact, if any, of taint as to the competency of A.D. and L.D. to this court within 180 days of this order. Jurisdiction is retained.

Former Chief Justice ZAPPALA did not participate in the decision of this case.

Justice NIGRO files a dissenting opinion.

Justice EAKIN files a concurring and dissenting opinion.

Justice NIGRO, dissenting.

I respectfully dissent, as I disagree with the majority's conclusion that taint is a matter of competency, rather than credibility, and therefore disagree with the majority both that taint is properly addressed in a competency hearing and that it is a proper subject of expert testimony.[1]

As the majority recognizes, this Court has stated that when determining whether a child under the age of fourteen is competent to testify, the trial court must consider whether the child has (1) "the capacity to communicate, including an ability to understand questions and to frame and express intelligent answers," (2) "the mental capacity to observe the occurrence itself and the capacity to remember what it is that she is called to testify about," and (3) "a consciousness of the duty to speak the truth." *Rosche v. McCoy*, 397 Pa. 615, 156 A.2d 307, 310 (1959) (emphasis omitted). In essence, these questions are

---

1. It is well established that experts may not be called to testify regarding a witness's credibility. *See, e.g., Commonwealth v. Dunkle*, 529 Pa. 168, 602 A.2d 830, 837 (1992) (trial court erred in admitting expert testimony as to why sexually abused children delay in reporting abuse and why sexually abused children may not remember details of the abuse because such testimony infringed on jury's right to determine credibility); *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920, 921 (1986) (trial court erred in admitting expert testimony that young children lack the sexual knowledge to supply details about sexual encounters and therefore usually do not fabricate stories of sexual abuse because such testimony encroached on jury's province to determine credibility); *see also Commonwealth v. Balodis*, 560 Pa. 567, 747 A.2d 341, 345 (2000) (finding merit in appellant's argument that trial counsel was ineffective for failing to object to expert testimony that sexually abused children delay in reporting abuse and reveal abuse in stages because such testimony improperly bolstered the victim's credibility); *Commonwealth v. Davis*, 518 Pa. 77, 541 A.2d 315, 317 (1988) (trial counsel was ineffective under *Seese* for failing to object to expert testimony that children typically have had some sort of sexual experience in order to report abuse because such testimony assessed children's truthfulness). *Cf. Commonwealth v. Crawford*, 553 Pa. 195, 718 A.2d 768, 773 (1998) (under *Seese*, trial court did not err in excluding expert testimony that questioned validity of a witness's supposed revived repressed memories because such testimony was intended to attack witness's credibility).

designed to ascertain the child's overall ability to observe, remember, and convey information. *See Commonwealth v. Ware*, 459 Pa. 334, 329 A.2d 258, 268 (1974) ("The core of the competency test is the ability to give a correct account of the matters which [the witness] has seen or heard." (internal quotation marks omitted)). Thus, in a competency hearing, the trial court traditionally asks the child such questions as "Do you know what it means to tell the truth?" and probes whether the child can, in general, recall and relate memories from the approximate time period at issue.

Under the majority's holding today, in child abuse cases involving allegations of taint, the scope of questions at a competency hearing will be expanded to cover "the totality of the circumstances surrounding the revelation of the allegations of child abuse." Op. at 41. This will presumably include specific questions regarding the alleged abuse, the child's conversations with others regarding that abuse, and the extent to which the child's recollection of events may have changed as a result of those conversations.[2] According to the majority, such inquiries are analogous to those a court uses when probing the ability of a mentally ill or mentally retarded adult to retain an independent recollection of events. Op. at 40 (citing *Commonwealth v. Rolison*, 473 Pa. 261, 374 A.2d 509 (1977) (plurality); *Commonwealth v. Anderson*, 381 Pa.Super. 1, 552 A.2d 1064 (1988)). However, an allegedly "tainted" child, unlike a mentally ill or mentally retarded adult, does not suffer from a complex medical condition that renders her generally unable to process events, retain memories, or understand her responsibility as a witness.[3] *See* Wigmore, Evidence § 492, at 698 (Chadbourn rev. ed. 1979) ("The true

---

2. While not material to my analysis here, I feel compelled to note that requiring allegedly tainted children to recount their traumatic experiences of abuse not only at a preliminary hearing and trial, but also at this newly-formulated version of a competency hearing, seems to give little consideration to the additional trauma such testimony undoubtedly inflicts on young children.

3. The majority also analogizes a "tainted" child to a hypnotized adult, and cites this Court's decision in *Commonwealth v. Nazarovitch*, 496 Pa. 97, 436 A.2d 170 (1981), for the proposition that hypnotically-induced testimony raises questions of competency. *See* Op. at 40. However, the issue in *Nazarovitch* was not whether questions regarding the

reason for not admitting the testimony of a person [who is mentally ill] in any case is because his malady involves such a want or impairment of faculty that events are not correctly impressed on his mind, or are not retained in his memory, or that he does not understand his responsibility as a witness." (internal quotation marks omitted)). Rather, allegations of "taint" merely contend that improper interviewing techniques have marred select memories that a child would otherwise be capable of retaining and conveying. In my view, questioning regarding the effect of these external forces on a child's memory simply do not go to a child's *competency* to testify, but rather merely probes whether the child's supposed memory of an event should be believed. As such, I believe that the taint inquiry is more appropriately characterized as a classic question of credibility. *See Black's Law Dictionary* 374 (7th ed.) (defining credibility as "[t]he quality that makes something (as a witness or some evidence) worthy of belief").

In the instant case, the trial court properly explored at the competency hearing the children's capacity to retain and communicate memories, as well as their consciousness of the duty to speak the truth. Upon doing so, the court concluded that the children were competent to testify. In turn, at trial, the court permitted no expert testimony regarding taint,[4] but

reliability of hypnotically-induced testimony were questions of competency or credibility, but rather, was whether hypnosis, in general, "is a reliable and trustworthy evidentiary device whereby memory can be sufficiently and adequately refreshed." 436 A.2d at 173. In addressing this issue, the court employed a *Frye* analysis, *see Frye v. United States*, 293 F. 1013 (App.D.C.1923), and held only that absent additional proof that hypnotically-induced testimony was reliable, no such testimony would be admissible in the courts of this Commonwealth. Although the trial court in *Nazarovitch* apparently addressed the admissibility of the witness's testimony at a proceeding that it called a "competency" hearing, the opinion makes clear that the trial court scheduled the "competency" hearing in response to an indication by the defendant that he planned to attack the *credibility* of the hypnotized witness at trial. *Id.* at 172. Accordingly, unlike the majority, I do not read *Nazarovitch* to support a contention that questions regarding the reliability of hypnotically-induced testimony are necessarily questions of competency, rather than credibility.

4. In this regard, I note that the record contains scant evidence as to the exact testimony Appellant's expert would have offered, except his own

allowed Appellant's attorney to freely cross-examine the children regarding the accuracy of their memories, and the jury ultimately found the children's testimony to be credible. As this was, in my view, the appropriate way to deal with Appellant's allegations of taint, I would not, unlike the majority, remand for further proceedings regarding those allegations.

Justice EAKIN, concurring and dissenting.

I agree that any witness (child or not), tainted by the "implantation of false memories or distortion of actual memories through improper and suggestive interview techniques," may be incompetent. If there is a competency hearing because of the age of the witness, the logical time to explore taint, once there is a preliminary showing taint actually occurred, is at that hearing. However, I disagree that "taint" always goes to competency; I also take issue on the use of expert witnesses on what is really a credibility issue. Finally, I disagree that the "evidence" here justifies a hearing in the first place.

The word "taint" may be used as a verb, a noun, or an adjective. It may be used to refer to the process of tainting, or to the result of that process; in the context of child abuse, it may mean the investigation was tainted, which may or may not mean the witness was tainted. Unfortunately many of the cases do not make this distinction clear, which (with apologies) taints the analysis.

A tainted process may affect credibility, but it does not render the victim or witness tainted or incompetent unless it denies the ability to perceive, understand, or communicate truthfully. If a child has faced interview after interview, but remains steadfast, the child cannot be precluded from testifying simply because the investigation was deemed tainted. Legitimizing the notion that establishing some taint of process proves taint of the witness, and hence incompetence *per se*, we

contention that he would testify to the "accuracy" or "reliability," rather than the "truthfulness" or "credibility," of the children's statements. R.R. at 258a (N.T., 5/10/1999, at 171–74).

allow the total disqualification of witnesses whose competence is in fact unaffected. Conversely, if the witness is not capable of perceiving, understanding, or communicating truthfully, it matters not if the reason is age, mental capacity, taint of process, or any other factor.

The true issue is whether the witness, not the process, is tainted to the point of being incompetent. I believe the existing procedure deals with this; once competence is properly at issue, the Commonwealth must prove the requisite elements of perception and understanding, and the challenging party may offer evidence to dispute that. Creating an additional burden of addressing taint as a separate notion simply muddies the waters with fashionable jargon; established legal procedures and concepts can address the claim. Taint may be an "emerging" notion, but it is nothing but a variation of traditionally recognized considerations; it does not require departure from traditional and tested principles for evaluating witnesses.[1]

While the majority lets the need for expert testimony to the discretion of the trial court, it notes that this Court has not permitted juries in child abuse cases to hear expert testimony on reasons children delay reporting, or about post-assault behavior patterns. I must assume that expert opinions on taint are likewise to be inadmissible at trial; if expertise on taint is allowed at trial, then other expertise on the subject of credibility is also appropriate. Pretrial, if taint is a recognized subject for opinion evidence, then certainly areas such as Child Sexual Abuse Syndrome, as recognized a phenomenon as taint, must also be proper subjects of expert testimony. The admission of expert testimony is not determined by which side wishes to address the issue; the search for credibility or competence is only served by allowing, or disallowing, experts

1. The classic case demonstrating a tainted witness was the Triangle Shirtwaist case. There, cross-examination revealed that a key eyewitness had memorized her story of what happened, and on the stand was merely repeating the story, time after time, word for word. This was a question of credibility, though, not competence. The witness, though clearly tainted, was merely incredible, not incompetent. *See People v. Harris, et al.,* 74 Misc. 353, 134 N.Y.S. 409 (1911).

on all issues affecting testimony of abused children. As I believe this is really a credibility matter, I would opt to disallow opinion testimony on the point.

The factors the majority suggests comprise a threshold showing here are these: (1) the age of the children, which make their memories "suspect merely because of their tender years," Majority Opinion, at 20; (2) their mother was abused sexually as a child; (3) she had sole custody; (4) her prior report of sexual abuse, which was held "unfounded"; and (5) the presence of Trooper Zellner during interviews. I believe these factors simply do not establish anything approaching a tainted process, much less one that tainted this witness, and find no basis for further examination of the issue.

First, the age of the children has little to do with taint. Their age may be relevant, but if a child's ability to remember is "suspect" because of age, as the majority states, that is a far cry from suggesting a false memory has actually been implanted. Children are presumed to be competent, and the bar establishing that competence is low. *See Commonwealth v. Washington*, 554 Pa. 559, 722 A.2d 643, 646 (1998) (citing *Rosche v. McCoy*, 397 Pa. 615, 156 A.2d 307 (1959)). Age may allow a naïve child to be more easily tainted than a cynical adult, but age has nothing to do with whether a person *was* tainted.

The majority next notes Mrs. Delbridge was sexually abused as a child, and had made a prior complaint that someone may have sexually abused AD when she was two years old. It appears we are to infer this is a potential case of crying wolf by the mother of the victim, but again no reason is given to suspect actual taint. Mrs. Delbridge may be understandably sensitive to signs of sexual abuse, but how does this suggest she did anything to implant false memories in her children? The majority suggests "her experiences may have influenced the course of the investigation," but every witness in every case from shoplifting to murder has experiences which affect (taint?) their involvement in an investigation. Even if she had run the investigation all by herself, the majority does not tell us why we should think a victim of

sexual abuse will implant false memories of victimization in others. This is plain and simple innuendo, and borders on an offensive stereotyping of victims. It is not based on evidence, and is no reason to suspect taint.

The prior allegation of abuse was dismissed as unfounded, at a time when AD was two years old and incapable of testifying; that case was hardly capable of being "founded" absent physical injury. Mere dismissal, without more, does not suggest the report was fabricated; the causes of the report were behavioral changes of the child, which were established by persons other than Mrs. Delbridge. Rather than support a suspicion she tainted the child, this prior report actually belies fabrication or implantation of false memory. If this implies she cried wolf, there is equal independent evidence there really was a wolf.

The majority also notes Mrs. Delbridge's influence over the children may have been enhanced because she had sole custody of them when the abuse was uncovered. Again we are to infer this common fact of life-after-divorce somehow implies she implanted specific memories of abuse in the minds of her children. Motive to dislike appellant is certainly understandable—witness the PFA Order—but a reason to dislike does not equal evidence there was action on that dislike, much less action of this nature. She was abused as a child, abused by appellant to the point of getting a PFA, protected her child by reporting prior behavioral changes that indicated abuse, won sole custody of the children—why does any of this lead to the suspicion she implanted false memories in the children?

The majority acknowledges appellant's claim that Trooper Zellner's presence at the interviews as a "guardian angel" supports the inference that appellant was vilified and the testimony tainted. Why this supports such a spurious inference, we are not told. At most, the record states Trooper Zellner told the child not to fear appellant, but does this support an inference appellant was "vilified"? Besides, the factual memories of the children, the very root of the allegations, necessarily preceded the trooper's involvement—even if Trooper Zellner had spoken ill of appellant, something not of

record, does this show the children were tainted *after the fact?* There is no allegation their testimony changed after his appearance; the very complaint is that the process implanted memories in the children, but the memory preceded the trooper. Having a protector with them does not imply the protector acted improperly or suggestively, or that he vilified anyone.[2]

In sum, there is not one fact that would logically suggest anyone did anything to taint these children. All of the listed factors are at most matters of credibility, reasons a skeptic might question the side denying taint, but they do nothing to affirmatively show there was taint in the first place. One is reminded of the rule of *corpus delicti;* there must be some independent evidence suggesting that a crime actually happened before the supporting credibility reasons allow the factfinder to believe and convict. Likewise, we cannot examine reasons to believe an allegation of tainting a witness until we have independent reason to believe that something approaching taint actually resulted. The factors cited are bootstrapping at its best, and I do not find the threshold met here.

Accordingly, I must respectfully dissent from the portion of the opinion of my colleagues which expresses a contrary view.

---

**2.** It is ironic that the basis for the claim of taint is suggestive interviewing, yet the solution to the problem is another round of questioning which may extend to the incident itself, including cross-examination, which is questioning that, by definition, suggests answers.