J-A02026-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARIO WALL | : | |
| | : | |
| Appellant | : | No. 737 WDA 2024 |

Appeal from the Judgment of Sentence Entered May 15, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0006020-2019

BEFORE: STABILE, J., MURRAY, J., and BECK, J.

MEMORANDUM BY MURRAY, J.: **FILED: January 16, 2026**

Mario Wall (Appellant) appeals from the reinstated judgment of sentence imposed after a jury convicted him of two counts of recklessly endangering another person (REAP), and one count each of aggravated assault, carrying a firearm without a license, and accident involving damage to an attended vehicle or property; and the trial court convicted him of one count each of reckless driving and driving while operating privilege suspended or revoked.[1] This Court previously vacated Appellant's judgment of sentence and remanded for a new competency hearing regarding E.W., Appellant's daughter, a child witness who testified at Appellant's trial. On remand, after a new hearing, the trial court determined E.W. was competent to testify, and

---

[1] 18 Pa.C.S.A. §§ 2705, 2702(a)(1), 6106(a)(2); 75 Pa.C.S.A. §§ 3743(a), 336(a), 1543(a).

reinstated Appellant's judgment of sentence. Appellant now challenges that competency determination. After careful review, we affirm.

This Court previously summarized the facts underlying Appellant's convictions:

> [On] May [4,] 2019, … Turtle Creek Police Officer Mark Terry [(Officer Terry)] responded to a call that a vehicle [had] been shot at in the Borough of Turtle Creek. The officer responded to the neighboring City of McKeesport police station and interviewed Akelya Wall (Ms. Wall [or E.W.'s mother]). Ms. Wall told the officer that her car was shot at twice and rammed three times on the Tri-Boro Expressway by her ex-intimate partner, [Appellant.] Ms. Wall had her [then five]-year-old daughter[, E.W.,] in the car, and she continued to drive until she arrived at the McKeesport police station. Ms. Wall told police that she observed [Appellant's] vehicle to be on fire when she looked in the rear-view mirror as she fled the area.
>
> [Shortly thereafter], Officer Terry was contacted by North Versailles police[,] asking him to respond to the scene of a vehicle on fire, which contained a firearm in the glove box. Officer Terry responded and recovered a Smith and Wesson .380 handgun, serial #KBT9679, which was reported to have been stolen. The officer then sought arrest warrants for [Appellant,] charging him with, *inter alia*, [the above offenses.][2]

*Commonwealth v. Wall*, 309 A.3d 1067 (Pa. Super. 2023) (unpublished memorandum at 2) (quoting Trial Court Opinion, 4/27/22, at 2-3) (original brackets and ellipses omitted; brackets and footnote added).

---

[2] The Commonwealth also charged Appellant with two counts of attempted homicide, a second count of aggravated assault, and one count of endangering the welfare of children (the additional offenses). *See* 18 Pa.C.S.A. §§ 901(a), 4304(a)(1). Further, the Commonwealth charged Appellant with one count of persons not to possess firearms. *Id.* § 6105. This charge was severed from the other charges. *See* Motion to Sever, 2/26/20; Order, 4/23/21 (granting motion to sever). Its ultimate disposition is unclear, and it is not relevant to the instant appeal.

The matter was scheduled for a jury trial in June 2021. On June 7, 2021, before the trial's commencement, the trial court held a hearing regarding then seven-year-old E.W.'s competence to testify. **See** N.T., 6/7/21, at 3-19. During the hearing, the trial court "sustained several Commonwealth objections to defense counsel's questions while cross-examining … E.W. about her ability to remember events from around the time of the incident[,] and further precluded defense counsel from inquiring about the details of E.W.'s interview with the prosecuting attorney." **Wall**, 309 A.3d 1067 (unpublished memorandum at 4); **see also** N.T., 6/7/21, at 9-13 (trial court sustaining the Commonwealth's objections to the following questions: "What did you talk to [the prosecutor] about?"; "Did you talk to your mother about something that happened a couple of years ago?"; "Can you tell me about something that happened when you were four or five?"). The trial court determined E.W. was competent to testify. **Id.** at 19.

Appellant's trial commenced on June 7, 2021, but the trial court declared a mistrial after the Commonwealth's first witness gave testimony indicating Appellant had been on probation at the time of the incident. **See id.** at 61-69. A new jury was empaneled, and a new trial proceeded on June 9-16, 2021. The Commonwealth presented testimony from ten witnesses, including E.W.

E.W. testified that she remembered being in a car accident on May 4, 2019, and that she was four years old at the time. N.T., 6/9-16/21, at 150-

51. She stated she was in a booster seat in the backseat of her mother's car, and her mother was driving. *Id.* at 151-52. E.W. testified she looked out the window and saw Appellant driving a different car, next to her mother's car. *Id.* at 152-53. She saw Appellant's face, and saw him holding a gun. *Id.* at 153. E.W. testified Appellant "shot a gun at" her mother's car, and hit her mother's car with his car. *Id.* at 153, 155. E.W. testified that her mother drove to a police station. *Id.* at 154. She also testified that, during the incident, a cable box fell from the rear dash and hit her in the head. *Id.* According to E.W., her mother later drove her to the hospital. *Id.* at 156. E.W. further testified that she did not speak to a police officer, and asserted that neither her mother nor the prosecutor told her what to say in her testimony. *Id.* at 157, 165.

At the trial's conclusion, the jury and the trial court convicted Appellant of the above offenses.[3] On July 28, 2021, the trial court imposed an aggregate sentence of 10-20 years' imprisonment.

Appellant timely appealed to this Court, arguing, *inter alia*, that "the trial court made erroneous evidentiary rulings at the competency hearing and further erred in determining that E.W. was competent to testify at trial." ***Wall***,

---

[3] The jury acquitted Appellant of the additional offenses, with the exception of the charge of attempted homicide of Ms. Wall, for which the jury could not reach a verdict. ***See*** Jury Verdict, 6/16/21. On June 30, 2021, the Commonwealth *nolle prossed* the remaining attempted homicide charge. ***See*** Commonwealth's Petition for Partial *Nolle Prosse*, 6/30/21.

309 A.3d 1067 (unpublished memorandum at 13). On November 22, 2023, in an unpublished panel decision, we agreed with Appellant regarding the evidentiary rulings, and remanded for a new competency hearing. *See id.* (unpublished memorandum at 18-21).

We discuss our prior decision in detail. Initially, we summarized the law relevant to Appellant's claim:

> The standard of review for evidentiary claims, as well as competency determinations, is abuse of discretion. *See Commonwealth v. Moore*, 980 A.2d 647, 650 (Pa. Super. 2009). Nevertheless, "[w]hen the witness is under fourteen years of age, there must be a searching judicial inquiry [by the trial court] as to [the child witness's] mental capacity…." *Commonwealth v. D.J.A.*, 800 A.2d 965, 969 (Pa. Super. 2002). …
>
> > In Pennsylvania, the general rule is that every witness is presumed to be competent to be a witness. [*See*] Pa.R.E. 601(a). Despite the general presumption of competency, Pennsylvania specifically requires an examination of child witnesses for competency. *See* Pa.R.E. 601(b) …. The Supreme Court of Pennsylvania established that when a witness is under the age of fourteen, the trial court must hold a competency hearing. *See Rosche v. McCoy*, [ ]156 A.2d 307, 310 ([Pa.] 1959) …. The *Rosche* Court instructed that the following factors must be applied in determining competency:
> >
> > > There must be (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that [the child] is called to testify about and (3) a consciousness of the duty to speak the truth.

- 5 -

*Moore*, 980 A.2d at 650. Rule 601(b) provides that a witness is incompetent to testify if because of a "mental condition or immaturity" the person, *inter alia*, "is, or was, at any relevant time, incapable of perceiving accurately." Pa.R.E. 601(b)(1). This Court has explained that the "[a]ny other relevant time" provision "necessarily includes the time during which the events the child is describing occurred." *D.J.A.*, 800 A.2d at 971. Rule 601(b)(3) also provides that a witness is incompetent if she has an "impaired memory." Pa.R.E. 601(b)(3).

In *Commonwealth v. Delbridge*, 855 A.2d 27, 39-40 (Pa. 2003) [(*Delbridge I*)], our Supreme Court expanded competency hearings to include a determination of whether a child's testimony was "tainted" by inquiries made by adults. As this Court explained:

> The core belief underlying the theory of taint is that a child's memory is peculiarly susceptible to suggestibility so that when called to testify a child may have difficulty distinguishing fact from fantasy. Taint is the implantation of false memories or the distortion of real memories caused by interview techniques of law enforcement, social service personnel, and other interested adults, that are so unduly suggestive and coercive as to infect the memory of the child, rendering that child incompetent to testify.

*Moore*, 980 A.2d at 650 (quoting *Delbridge* [*I*], 855 A.3d at 34-35).

We have explained the intersection of competency and taint as follows:

> A competency hearing concerns itself with the minimal capacity of the witness to communicate, to observe an event and accurately recall that observation, and to understand the necessity to speak the truth.
>
> A competency hearing is not concerned with credibility…. An allegation that the witness's memory of the event has been tainted raises a red flag regarding competency, not credibility. Where it can be demonstrated that a witness's memory has been affected so that their recall of events may not be dependable, Pennsylvania law charges the trial court

- 6 -

with the responsibility to investigate the legitimacy of such an allegation.

The Supreme Court accordingly concluded that an allegation of taint centers on the second element of the competency test and that the appropriate venue for investigation into a taint claim is a competency hearing.

*Id.* at 650-51 (internal citations and quotations omitted).

Lastly, regarding taint, specifically, this Court has provided that:

In order to trigger an investigation of competency on the issue of taint, the moving party must show some evidence of taint. Once some evidence of taint is presented, the competency hearing must be expanded to explore this specific question. ***During the hearing the party alleging taint bears the burden of production of evidence of taint and the burden of persuasion to show taint by clear and convincing evidence.*** Pennsylvania has always maintained that since competency is the presumption, the moving party must carry the burden of overcoming that presumption …. [A]s with all questions of competency, the resolution of a taint challenge to the competency of a child witness is a matter addressed to the discretion of the trial court.

When determining whether a defendant has presented some evidence of taint, the court must consider the totality of the circumstances surrounding the child's allegations. Some of the factors that courts have deemed relevant in this analysis include the age of the child, whether the child has been subject to repeated interviews by adults in positions of authority, and the existence of independent evidence regarding the interview techniques utilized.

*Moore*, 980 A.2d at 649-52 (some internal citations and quotations omitted; formatting altered; emphasis added). Where a defendant establishes entitlement to a new competency hearing for a child witness, "a remand … is required." *Delbridge* [*I*], 855 A.2d at 42. Our Supreme Court has acknowledged there are

"competing policy considerations" as to whether a "retrospective competency assessment" is appropriate, but concluded "that the better practice is to permit such an examination whenever a meaningful hearing can be conducted." **Id.** at 42 n.15.

**Wall**, 309 A.3d 1067 (unpublished memorandum at 13-16) (brackets designating **Delbridge I** added; remaining brackets in original).

We next summarized Appellant's argument:

[Appellant] argues the trial court erred … in finding E.W. competent because the evidence does not support the court's finding that E.W. satisfied the second prong of the competency test, namely, that she had the mental capacity to observe the occurrence itself and the capacity of remembering that about which she was called to testify. [Appellant] further maintains the trial court erred in precluding his attorney from inquiring into the issue of taint, which, as noted above, is also relevant to the second prong of the competency test. Relatedly, [Appellant] lastly asserts … that "[b]ased on the sum and substance of E.W.'s testimony, there was clear and convincing evidence that she did not have the mental capacity to recall the occurrence itself and communicate effectively about it …, nor did she demonstrate a consciousness of the duty to speak the truth." Essentially, [Appellant] maintains that E.W. failed all three prongs of the competency test. Accordingly, [Appellant] argues the trial court erred in finding E.W. competent to testify.

**Id.** (unpublished memorandum at 16-17) (footnote and citations to Appellant's brief omitted).

After reviewing the record of E.W.'s competency hearing, we set forth the following analysis and conclusion:

Based on our review, we conclude the trial court abused its discretion by precluding [Appellant's] counsel from exploring E.W.'s capacity to communicate (including both an ability to understand questions and to frame and express intelligent answers), as well as her mental capacity to observe the occurrence itself and her capacity for remembering that for which she was called to testify. The incident at issue here occurred in

May 2019. *See*, *e.g.*, Information, 7/22/19. The competency hearing did not occur until over two years later, in June 2021, at which time E.W. was seven years old. *See* N.T., 6/7/21, at 5. At the hearing, E.W. exhibited some confusion about her age at the time of the incident and at the time of the competency hearing; for example, she testified that at the time of the incident, which was two years prior, she would have been four years old. *See id.* at 12. Additionally, when asked on cross-examination if she was seven years old at the time of the hearing, she replied, "No. I'm turning eight. I've been seven, but two years ago I was four." *Id.* When asked to relate something "that happened when you were four or five," the trial court sustained the Commonwealth's objection:

> Objection, Your Honor. With regard to competency, we have to determine whether she is or was at any relevant time incapable of perceiving accurately. ***The relevant time actually refers to the time you are testifying either here or at a preliminary hearing. It does not refer to any time when the incident occurred.***

*Id.* at 12-13 (emphasis added). The Commonwealth's recitation of the law was erroneous. *See D.J.A.*, 800 A.2d at 971 (stating that Rule 601(b)(1)'s provision that a witness is incompetent if she "at any relevant time" is or was incapable of perceiving accurately "necessarily includes the time during which the events the child is describing occurred"). Having heard [defense counsel's] response, the trial court sustained the Commonwealth's objection without explanation, in essence adopting the Commonwealth's erroneous recitation of the legal standard. *See* [N.T., 6/7/21,] at 13. As cross-examination continued, E.W. subsequently was unable to relate anything "that happened to you last week," apart from her conversation with the prosecuting attorney in preparation for her testimony. *Id.* at 14.

We conclude that the trial court abused its discretion and committed an error of law by sustaining the Commonwealth's objection so early into [Appellant's] cross-examination of E.W., which was, additionally, premised on an inaccurate statement of the law. Because of this error, [Appellant] was unable to cross-examine E.W. about her ability to accurately perceive the events at issue at the time they occurred, as well as about E.W.'s ability to remember and communicate[,] at the time of trial[,] events

from the time of the incident. Without this information, the trial court was incapable of performing a "searching judicial inquiry as to [E.W.'s] mental capacity" and exercising its "discretion ... to make the ultimate decision as to competency." ***D.J.A.***, 800 A.2d at 969 (internal citations and quotations omitted). For the foregoing reasons, [Appellant] is entitled to a new competency hearing. ***See Delbridge*** [***I***], 855 A.2d at 42. Accordingly, we vacate the judgment of sentence … and remand for a new competency hearing. If the trial court finds E.W. competent, it shall reinstate the judgment of sentence. If the trial court finds E.W. incompetent to testify, the trial court shall conduct a new trial.

***Wall***, 309 A.3d 1067 (unpublished memorandum at 18-21) (footnotes omitted; paragraph break added).

In a footnote, we

reiterate[d] that, regarding taint, specifically, "[***i***]***n order to trigger an investigation of competency on the issue of taint, the moving party must show some evidence of taint.*** Once some evidence … is presented, the competency hearing must be expanded to explore this specific question." ***Moore***, 980 A.2d at 652 (emphasis added). Further, "[d]uring the hearing[,] the party alleging taint bears the burden of production of evidence of taint and the burden of persuasion to show taint by clear and convincing evidence." ***Id.***

***Wall***, 309 A.3d 1067 (unpublished memorandum at 20 n.5).

On March 26, 2024, in the trial court, Appellant filed a pre-hearing motion, which included a motion to permit an expert evaluation of E.W. and a motion for a taint hearing. In his motion to permit an expert evaluation, Appellant sought an order directing that E.W. be made available for evaluation by Dr. Beth Bliss (Dr. Bliss), a licensed psychologist. Pre-Hearing Motion, 3/26/24, ¶ 14. Appellant acknowledged his burden to "show some evidence of taint" in order "to trigger an investigation of competency on the issue of

taint." *Id.* ¶ 8 (emphasis omitted). Appellant asserted that, "[i]n order to meet [this] burden of production and to raise a possible issue of taint, it is necessary for the [d]efense to properly evaluate E.W.," through Dr. Bliss. *Id.* ¶ 9.

In his motion for a taint hearing, Appellant argued that "E.W. has spoken to multiple adults in positions of authority about the incident, calling into question whether she actually remembers the incident or remembers what the adults have told her…." *Id.* ¶ 23. Appellant noted that, at the first competency hearing and in her trial testimony, E.W. indicated she had spoken to the prosecutor. *Id.* ¶ 24 (citing N.T., 6/7/21, at 9; N.T., 6/9-16/21, at 166). Appellant also argued that

> E.W. gave inconsistent answers [in her trial testimony regarding] whether she spoke to her mother about the incident. When asked on cross examination whether she spoke to her mother about the incident, E.W. originally said[,] "I don't remember if I have, but I think I did." [N.T., 6/9-16/21,] at 165. [E.W.] then said she did not speak to her [mother] about the incident. *Id.* at 165-66. [In her own trial testimony, Ms.] Wall, E.W.'s mother, testified that she did speak to [E.W.] about the incident after it happened. *Id.* at 92.

Pre-Hearing Motion, 3/26/24, ¶ 25.

Appellant further asserted that he "intends to provide expert testimony through Dr. Bliss detailing issues/indicators of taint in this case. [Appellant] respectfully requests the right to amend this motion to include Dr. Bliss'[s] findings after evaluating E.W." *Id.* ¶ 28. Notwithstanding his earlier argument, *i.e.*, that he needed Dr. Bliss's evaluation to meet his burden to

show some evidence of taint, Appellant concluded by asserting that he "has provided sufficient evidence of taint and respectfully requests that the competency hearing be expanded to investigate this issue." *Id.*, prayer for relief.

On April 7, 2024, the trial court entered orders denying Appellant's motion to permit an expert evaluation and motion for a taint hearing. Orders, 4/7/24. On April 11, 2024, Appellant filed a motion requesting reconsideration of the order denying his motion for a taint hearing. On April 12, 2024, the trial court denied the motion for reconsideration.

On April 30, 2024, the trial court held a new competency hearing, at which then ten-year-old E.W. testified as the only witness. N.T., 4/30/24, at 5; *see also id.* at 18 (E.W. testifying she was born in December 2013). On direct examination, E.W. testified that she understood the difference between lying and telling the truth. *Id.* at 5-8. E.W. testified that lying "is when you make something up"; lying is not good; and she "can get consequences" if she tells a lie. *Id.* at 6-7. E.W. agreed that the truth is real and telling the truth is good, and testified that telling the truth "means you don't lie." *Id.* She explained that swearing to tell the truth means promising that she "will do it and tell the truth." *Id.* at 7. According to E.W., breaking a promise is not good, and that if she breaks a promise, nobody will trust her. *Id.* at 7-8. E.W. agreed that she swore to tell the truth prior to her testimony, and testified that if she did not tell the truth she "will be in big trouble." *Id.* at 8.

E.W. testified that she remembered being in court on a prior occasion. *Id.* at 8. Asked why she had been in court, E.W. stated, "Because something occurred with my dad and we had to go to court." *Id.* E.W. testified that she remembered what occurred, describing the incident as follows:

> So we were driving to go to my babysitter. And my dad was on this side. And then he rolled down the window and put a gun on my mom. And mom was like swerved [*sic*] and my dad's car blew up and we had to go get help.

*Id.* When asked her age at the time of the incident, E.W. stated she was "[f]our turning five." *Id.* at 9. She did not remember if it was winter or summer, but testified the weather was warm. *Id.* She testified she had been in the back seat of the car; her mother was in the front seat; and Appellant was not in the car with them but was in a different car. *Id.*

E.W. testified that she was in first grade at the time of the incident, and named her first grade teacher. *Id.* at 10. She testified she was currently in fourth grade and named her teachers. *Id.* E.W. further testified that, when she was four or five, she lived in a house that she no longer lives in. *Id.* at 11. She briefly described her former house, and testified that her former bedroom was pink and purple. *Id.* E.W. testified that her current bedroom was white. *Id.* E.W. identified certain toys and a television show she liked when she was five, and testified that she no longer liked to watch that show. *Id.* at 12. E.W. named three friends she had when she was five, and stated that she was still friends with those individuals. *Id.* at 12-13.

- 13 -

E.W. recalled testifying in court on a prior occasion. *Id.* at 13. When asked if she "remembered any of the people who were with [her] when [she] testified the last time," E.W. stated, "I remember Alex and my mom." *Id.* at 15. E.W. described Alex as a female with brownish, curly hair. *Id.*[4]

On cross examination, E.W. testified that she did not remember seeing Appellant's counsel before.[5] *Id.* at 16. E.W. stated she remembered being in court on only one prior occasion, and that the proceedings were in a different, bigger room than the current proceedings. *Id.* E.W. testified she remembered her mother, Appellant, and a judge being in the courtroom on the prior occasion. *Id.* at 17. Asked if she "remembered if it was this judge or a different judge," E.W. stated, "I think it was a different judge." *Id.* E.W. testified she was in first or second grade at the time of her prior court appearance. *Id.*

E.W. testified that, during the incident, she was sitting "on the right side of the back[seat]" in her mother's car, and Appellant's car was on the right side of her mother's car. *Id.* at 21-22. E.W. testified that Appellant's front

---

[4] According to the Commonwealth, "[i]t is not clear from the record who 'Alex' is, although in the context it seems she was associated with the prosecution, perhaps as a victim advocate." Commonwealth Brief at 12.

[5] Appellant's counsel at the second competency hearing also represented Appellant at trial and the first competency hearing. The prosecutor who appeared at trial and the first competency hearing no longer represented the Commonwealth at the second competency hearing. The same trial judge presided over all proceedings. *See generally* N.T., 6/7/21; N.T., 6/9-16/21; N.T., 4/30/24.

- 14 -

window was down, and she remembered seeing his face and a gun. *Id.* E.W. asserted she could tell it was a real gun and not a toy gun, saying, "Because toy guns look fake and real guns look real. And you can get hurt from real guns. … I know what a gun looks like." *Id.* at 22. E.W. remembered hearing her mother screaming, and testified that she thought the gun "was shot," "[b]ecause my mom's car … [h]ad damage and stuff." *Id.* at 23. E.W. testified that, during the incident, a "cable [box] … fell on [her] head," and it hurt. *Id.* at 24. E.W. stated she "had a concussion and … had to go to the hospital," but asserted that her injury did not impair her memory of the incident. *Id.*

E.W. testified that she was in the hospital for a week after the incident. *Id.* at 25. She testified that she eventually talked to her mother about the incident, saying, "I told her how I felt." *Id.* at 26. E.W. stated her mother told her "it was okay[.]" *Id.* E.W. denied that her mother ever told her Appellant was in the other car, saying her mother "didn't know [Appellant] was in the other car." *Id.* E.W. testified her mother never talked to her about Appellant shooting at them, explaining that "I didn't want to talk about that." *Id.* According to E.W., her mother did not tell her what to say during her first court appearance. *Id.* Rather, E.W. testified her mother told her "to be brave and don't be scared." *Id.* at 27. E.W. stated she did not talk to anyone else about the incident. *Id.* at 26, 28.

Regarding her first court appearance, E.W. testified that the prosecutor "asked [her] questions before" the court proceeding started. *Id.* at 28. E.W. testified that conversation occurred "at court." *Id.* She stated she did not remember having a video chat with the prosecutor. *Id.* at 28-29. At that point, Appellant's counsel attempted to refresh E.W.'s recollection by having her read the following portion of her trial testimony:

Q [Prosecutor]: Now, did we talk last week?

A [E.W.]: Yes.

Q: Did we have a video chat?

A: Yes.

Q: And during that video chat what did we talk about?

A: We talked about a truth and a lie.

Q: And did we talk about what it would be like to be in court today?

A: Yes.

Q: And what's the most important thing?

A: To tell the truth.

Q: And did I tell you what to say today?

A: No.

N.T., 6/9-16/21, at 157. Appellant's counsel also had E.W. read a portion of her testimony from the first competency hearing, wherein she acknowledged she "talked to the prosecutor on the computer" during the preceding weekend. N.T., 6/7/21, at 8-9; *see also id.* at 8 (E.W. testifying she talked about "truth and lies" with the prosecutor, and that truth is "the most important thing").

After reading her prior testimony, E.W. testified she still did not remember a video chat with the prosecutor. N.T., 4/30/24, at 31-32. E.W. agreed she did not "remember the prosecutor ever talking to [her] about what happened to [her] dad prior to court[.]" *Id.* at 32. E.W. testified she remembered only Alex talking to her. *Id.* at 32-33. E.W. stated Alex talked to her in the hallway outside the courtroom. *Id.* at 33. E.W. explained that Alex did not talk to her about the incident, but rather "talked to [her] about how it was going to be in the courtroom and [said] don't be scared." *Id.*

Following E.W.'s testimony, the trial court heard argument from the parties' counsel. Pertinently, the court and Appellant's counsel had the following exchange regarding taint:

> [Appellant's counsel]: … [W]hen asked about the conversation [E.W.] had with the prosecutor when she testified [previously] that she had a video chat with the prosecutor and talked to her about the incident at the last hearing, [E.W.] does not remember that at all today, which could go to her ability to remember and perceive and also to taint.
>
> … [A]s the Superior Court noted in [its] opinion the last time for this case, … when [E.W.] answered the question about talking to the prosecutor about the incident, we were not allowed to go further into it at that time, what she spoke to [the prosecutor] about and whether she told her anything about the incident. That could—
>
> THE COURT: Let me stop you right there. The hearing is over. I heard from the Commonwealth. I gave you an opportunity to present witnesses. Now, you're arguing taint. How is that so? … There has to be some evidence of taint presented. I have heard none today.
>
> [Appellant's counsel:] Your Honor, I filed two motions in this case.

- 17 -

THE COURT: Then it's not proper for today's hearing. The threshold issue is that you have to present some evidence of taint. You have presented none. Why are we arguing about it? Why are you arguing about it?

[Appellant's counsel]: And, Your Honor, in my [pre-hearing] motion I did put what our position is with what we presented as taint, which was all we had at the time, which was that [E.W.] spoke to the prosecutor about the incident and that she spoke to her mom about the incident and that she … also was not properly forensically interviewed in this case, which is the mechanism to protect against injustice questioning [*sic*] and implanting false memory. Because of that, I asked, at that point, for an expert to evaluate her for taint because as—

THE COURT: You presented no evidence about improper interrogation techniques today. None at all.

N.T., 4/30/24, at 38-40 (some capitalization and paragraph breaks modified).

The exchange continued as follows:

[Appellant's counsel]: … [R]egarding what Your Honor said earlier … about presenting some evidence of taint, which we submit that we did—

THE COURT: You haven't in this hearing. You haven't presented any evidence of taint in this hearing.

[Appellant's counsel]: Which is why I wanted to have an expert evaluate [E.W.], because she wasn't forensically interviewed.

THE COURT: Before you get the expert, it has to be an issue that you have to cross the threshold for me to even consider an expert. And it has to be something that I am not capable of doing. The [**Delbridge**] Court …, especially [in **Delbridge II**,[6]] left it to the individual trial judge to decide whether or not there was taint or whether the witness was competent. The [**Delbridge** Court] … painted with no broad brush about an expert being available in the case. The only issue that is clear is that there has to be some evidence of taint presented. And I have heard none.

---

[6] **Commonwealth v. Delbridge**, 859 A.2d 1254 (Pa. 2004) (**Delbridge II**).

[Appellant's counsel]: And, Your Honor, I think that goes to [E.W.] testifying that she does not even remember what the conversation with the prosecutor was prior to her court testimony. If I am to be able to present some evidence of taint and really delve into that, I need to know what that conversation consisted of. But [E.W.] was not able to tell me because I believe she is not competent.

THE COURT: It wouldn't surprise me that an adult, a mature and an educated adult, may not be able to recall the name of the prosecutor who tried this case. The name of a witness or the specific date. [E.W.] did know that it was warm. This happened in May of 2018 or 2019? There were a lot of things that she did remember. And it's not unusual for a witness's memory to fail them. And that goes to credibility and weight that you give a witness. Not whether or not the threshold issue of whether they are competent to testify has been met.

[Appellant's counsel]: I think it goes to both, Your Honor. And what I am bringing up about the prosecutor's conversation with [E.W.] is not that she remembers [the trial prosecutor's] name or anything like that. It's that [E.W.] remembers the conversation she had with [the prosecutor] and if that conversation consisted of the prosecutor telling her anything about this incident or her dad being in the car, which she cannot remember at all.

THE COURT: [E.W.] doesn't remember [the trial prosecutor]? Quite frankly, I can't remember. I couldn't remember. Thank you for helping me. I couldn't remember who tried this case for the Commonwealth.

There's been no evidence of taint. No evidence of unduly suggest[ive] interrogation techniques. No testimony today that [E.W.] was even interrogated by anyone…. And that's the threshold issue for you to establish if you want to get into taint. Taint is a proper subject matter and an area of inquiry for a competency hearing, but we're not there. I have no testimony about that.

*Id.* at 42-45 (some capitalization and paragraph breaks modified; footnote added).

- 19 -

After the hearing, the parties filed briefs in support of their respective positions. On May 15, 2024, the trial court entered an order finding E.W. to be competent, and reinstating Appellant's judgment of sentence. Order, 5/15/24; *see also* N.T., 5/15/24, at 2-4, 8-9 (trial court announcing its competency decision on the record).

Appellant timely appealed. Appellant and the trial court have complied with Pa.R.A.P. 1925. Appellant presents three questions for our review:

> 1. Whether the trial court erred in denying [Appellant's] pre-hearing request for permission to have a defense-retained expert evaluate E.W. for indications of taint?
>
> 2. At the competency hearing, whether the trial court erred in refusing to entertain any argument with regard to taint, insisting that [Appellant] failed to present any evidence of taint in order to raise the issue?
>
> 3. Whether the trial court erred in determining that E.W. was competent to testify at trial?

Appellant's Brief at 7.

As Appellant's brief argues his three issues together, we address them together. *See id.* at 34 n.2. Appellant argues the trial court erred in denying his pre-hearing request to permit an expert evaluation of E.W. *Id.* at 45-46. Appellant also argues the trial court erred in restricting his argument at the conclusion of the April 30, 2024, competency hearing, where the trial court maintained Appellant had presented no evidence of taint. *Id.* at 48. These arguments rest on Appellant's assertion that he did, in fact, present some

evidence of taint, both in his pre-hearing motion and through E.W.'s April 30, 2024, hearing testimony. *Id.* at 36-40, 44, 47.

Appellant points to his pre-hearing motion's averment that "E.W. has spoken to multiple adults in positions of authority about the incident, calling into question whether she actually remembers the incident or remembers what adults have told her over the past five years." *Id.* at 37 (quoting Pre-Hearing Motion, 3/26/24, ¶ 23). Appellant notes his pre-hearing motion cited E.W.'s acknowledgement, at both the first competency hearing and at trial, that she spoke to the prosecutor. *Id.* (citing Pre-Hearing Motion, 3/26/24, ¶ 24). Appellant's motion also alleged E.W. "gave inconsistent answers [regarding] whether she spoke to her mother about the incident." *Id.* (quoting Pre-Hearing Motion, 3/26/24, ¶ 25). Appellant's motion further asserted that "it has now been … three years since E.W. testified in court, indicating a strong likelihood that she has" had additional conversations with "adults in positions of authority since her [original] testimony." *Id.* at 37-38 (quoting Pre-Hearing Motion, 3/26/24, ¶ 26). Finally, the motion averred that "E.W. was never forensically interviewed in this case, which protects against improper interview techniques and suggestive questioning." *Id.* at 38 (quoting Pre-Hearing Motion, 3/26/24, ¶ 27).

Appellant argues "some evidence of taint was unquestionably presented at the new competency hearing." *Id.* at 47.

> At the original competency hearing, E.W. admitted that she spoke to the prosecutor in preparation for her testimony. N.T., 6/7/21,

at 9-10. Importantly, E.W. made this same admission at the new competency hearing. N.T., 4/30/24, at 28-29. Furthermore, E.W. testified at the new competency hearing that she spoke to another member of the prosecution team "in the hallway and then a little more when we came into the courtroom." *Id.* at 32-33.

Appellant's Brief at 47 (record citations modified).

Appellant maintains that, in light of these facts,

the trial court committed reversible error in denying [Appellant's] request to have his defense-retained expert evaluate E.W. for indications of taint, as well as in finding that no evidence of taint had been presented in order to raise the issue. Moreover, by refusing to investigate whether E.W.'s memory and testimony had been tainted, the trial court was "incapable of performing a 'searching judicial inquiry as to [E.W.'s] mental capacity' and exercising its 'discretion … to make the ultimate decision as to competency.'" [*Wall*, 309 A.3d 1067 (unpublished memorandum at 20) (quoting *D.J.A.*, 800 A.2d at 969).]

Appellant's Brief at 48.

The Commonwealth counters that Appellant never identified any evidence of taint, and that "[t]here is exactly zero evidence of record suggesting that E.W.'s memory was tainted." Commonwealth Brief at 7. The Commonwealth emphasizes that taint is

the implantation of false memories or the distortion of real memories caused by interview techniques of law enforcement, social service personnel, and other interested adults, **that are so unduly suggestive and coercive** as to infect the memory of the child, rendering that child incompetent to testify.

*Id.* at 8 (quoting *Delbridge I*, 855 A.2d at 35 (emphasis added by the Commonwealth)). The Commonwealth argues "the sum total of all of the supposed 'evidence' of taint in the record" is

a handful of conversations between E.W. and the prosecutor, "Alex," and her mother, during which the difference between a truth and lie was discussed, and during which E.W. was told what being in court would be like and was told to be brave and not be scared. During the video call with the prosecutor, [E.W.] did apparently discuss "something that happened a [couple of] years ago," [N.T., 6/7/21, at 9,] which might be referring to the incident in question, but even that is reading something into the record that is, strictly speaking, not there.

Commonwealth Brief at 13.

The Commonwealth asserts Appellant "presented zero evidence … of improper interview techniques by any adult," "zero evidence … of any suggestive questioning by any adult," and "zero evidence … that anyone was vilifying [Appellant] as the accused during their conversations with E.W." *Id.* The Commonwealth further asserts that Appellant "did not even attempt to call" as witnesses the adults who conversed with E.W., who "may have been able to shed light on what exactly was discussed during these conversations." *Id.* The Commonwealth argues the trial court did not prevent Appellant from asking any questions during the second competency hearing; did not sustain any Commonwealth objection during that hearing; and did not prevent Appellant from calling as witnesses any of the adults who had conversed with E.W. *Id.* at 15.

The Commonwealth maintains that Appellant rests his argument

*solely on the fact that conversations with adults occurred*, and tries to call that, by itself, evidence of tainted memory in E.W. But the mere fact that a child witness spoke with adults is not by itself evidence of *tainted memory* in that child; it is just evidence that some conversations occurred. Whether those conversations were in any way *coercive* or *improper* is a question that [A]ppellant left

- 23 -

entirely unexplored at the second competency hearing. And indeed, … the record reflects that the substance of those conversations was "be brave" and "tell the truth."

Stated another way, to hold for [A]ppellant here would be to hold that any conversations with adults by a child witness, no matter how vague the record is when it comes to describing the actual content of those conversations, and no matter how silent the record is as to whether those conversations were actually coercive or improper, *ipso facto* constitutes "some evidence" of a tainted memory in the child justifying the expansion of the competency hearing to include taint. This would stretch our Supreme Court's holding in **Delbridge** so far past its breaking point as to functionally eviscerate it.

Commonwealth Brief at 14 (emphasis in original).

The Commonwealth argues that Appellant's pre-hearing request for an expert evaluation of E.W. was premature, and that Appellant first had to show some evidence of taint at the competency hearing. **Id.** at 17-18 (citing **Delbridge I**, 855 A.2d at 40 ("During the hearing the party alleging taint bears the burden of production of evidence of taint….")). Finally, the Commonwealth argues that because no evidence of taint was presented during the competency hearing, the trial court did not err in "refus[ing] to entertain argument as to taint." **Id.** at 21.

Before analyzing Appellant's issues, we acknowledge the standard of review and relevant law as set forth in our prior panel decision, quoted at length above. **See Wall**, 309 A.3d 1067 (unpublished memorandum at 13-16). We additionally observe that, in **Delbridge I**, the Supreme Court stated as follows regarding the necessity of expert testimony on the subject of taint:

A determination of competency involving allegations of taint necessitates review of the manner in which the child's allegations of abuse[7] surfaced and were investigated. In some cases it is conceivable that resolution of this issue could be had through an examination of the factual context of the interview process. It is also conceivable that with certain children, given differences in age, experience, mental acuity and familial circumstances, and considering specifics of the allegations of abuse, and the circumstances surrounding the investigation itself, that expert testimony may be necessary. …

In Pennsylvania, expert testimony is admissible when a matter in issue is beyond the common knowledge of the factfinder:

If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Pa.R.E. 702. ***In a competency hearing, the trial judge must determine the facts and reach a legal conclusion. It is thus the trial judge who must decide if expert testimony will advance a resolution of the question of competency on a case-by-case basis. Accordingly, we will leave to each individual jurist, subject to appropriate review, the decision of whether in any particular case alleging taint expert testimony would assist the court in understanding the evidence or determining a fact in issue during a competency hearing.***

***Delbridge I***, 855 A.2d at 43 (emphasis and footnote added; one internal citation omitted).

_____

[7] In ***Moore***, this Court observed that, "[w]hile the facts of ***Delbridge*** and its progeny involved victims of sexual abuse, nothing in the ***Delbridge*** decision explicitly limited its holding to sexual abuse cases." ***Moore***, 980 A.2d at 653 (concluding "that the Supreme Court did not limit its holding in ***Delbridge*** to those instances involving a young child victim of sexual abuse.").

- 25 -

After recognizing, as a matter of first impression, "that taint is a proper subject for inquiry and that such an investigation should occur within a competency hearing," the ***Delbridge I*** Court remanded to the trial court for a new competency hearing. ***Id.*** at 35, 40, 47. On remand, the trial court held a new competency hearing, determined expert testimony was unnecessary, and found the child witnesses competent. ***Delbridge II***, 859 A.2d at 1256-57. In ***Delbridge II***, the Supreme Court affirmed the trial court's decision. The Supreme Court observed

> it was the trial court's opinion that expert testimony was unnecessary in this case on the issue of competency, because there was a failure of proof as to taint. We … agree with that conclusion. In this narrow group of cases, involving allegations of sexual abuse inflicted upon children of tender years, the existence of taint is a threshold question to determining competency. An expert may testify to assist the factfinder in evaluating competency in those cases where taint is present. Here, as no proof of taint was demonstrated, expert testimony was unnecessary. ***Delbridge*** [***I***,] 855 A.2d at 43.

***Delbridge II***, 859 A.2d at 1259. The ***Delbridge II*** Court reiterated that, "[o]n the question of expert testimony, [the ***Delbridge I*** Court] felt confident that each individual trial jurist could assess the need for expert testimony within a competency hearing where taint is at issue, on a case by case basis." ***Id.*** (citing ***Delbridge I***, 855 A.2d at 43). "[T]he factfinder must … assess the impact of … taint upon competency" only in "in th[e] limited context[] where taint has been proven…." ***Id.*** The ***Delbridge II*** Court "agree[d] that expert testimony was not needed here, given the failure of [a]ppellant to develop proof of taint in this case…." ***Id.*** at 1260.

Instantly, in its Rule 1925(a) opinion, the trial court summarized the circumstances and holding in **Delbridge II**, and found Appellant similarly failed to develop proof of taint. Trial Court Opinion, 1/7/25, at 4-5. The trial court set forth the following analysis:

> The instant case was remanded for a new competency hearing. [Appellant] could have, and should have, raised the issue of taint in a challenge to [E.W.'s] competency. There was no evidence of taint presented at the competency hearing by the defense. Therefore, the trial court did not allow argument on the issue of taint. The trial court did not preclude [Appellant] from offering evidence of taint at the competency hearing. It was not error to preclude [Appellant] from conducting an [expert] evaluation of E.W. … in this case, where the issue of taint was not raised in the competency hearing. [N.T., 4/30/24, at] 29-41.

*Id.*; *see also id.* at 3-4 (discussing the factors to be applied in determining competency, and finding E.W. "satisfactorily testified and met the relevant standards").

We agree with the trial court's reasoning and conclusion. As the Commonwealth points out, Appellant's contention that he showed some evidence of taint relies on the bare fact that E.W. had conversations with adults prior to her original court appearance. Appellant fails to identify any evidence indicating those conversations were "so unduly suggestive and coercive as to infect the memory of the child, rendering that child incompetent to testify." **Delbridge I**, 855 A.2d at 35. Appellant identifies no authority suggesting that a child witness speaking to an adult is, by itself, evidence of taint. **See Commonwealth v. Reyes-Rodriguez**, 111 A.3d 775, 781 (Pa.

Super. 2015) (*en banc*) ("When an appellant cites no authority supporting an argument, this Court is inclined to believe there is none.").[8]

In light of the foregoing, we discern no error or abuse of discretion in the trial court's denial of Appellant's pre-hearing motion to permit an expert evaluation. **See Delbridge II**, 859 A.2d at 1259 ("An expert may testify to assist the factfinder in evaluating competency in those cases where taint is present. Here, as no proof of taint was demonstrated, expert testimony was unnecessary."). We also discern no error or abuse of discretion in the trial court's restriction of Appellant's argument regarding taint following the second competency hearing. **See Delbridge I**, 855 A.2d at 40 ("In order to trigger an investigation of competency on the issue of taint, the moving party must show some evidence of taint."). Finally, we discern no error or abuse of discretion in the trial court's determination that E.W. was competent to testify. **See Moore**, 980 A.2d at 650 (discussing the factors to be applied in determining competency).[9] Accordingly, none of Appellant's issues merit relief, and we affirm his judgment of sentence.

_____

[8] We observe that Appellant's brief identifies no cases in which a child witness's memory was deemed tainted, or where expert testimony regarding taint was deemed necessary. **See generally** Appellant's Brief. Appellant's brief does not discuss the underlying facts of any case he contends is analogous to his own. **Id.**

[9] Apart from his contention that the trial court did not properly investigate the issue of taint, Appellant does not argue the trial court erred in its application of the competency test. **See generally** Appellant's Brief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

1/16/2026